EalQsecC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    SECURITIES and EXCHANGE
     COMMISSION
4                    Plaintiff

5            v.                          13 CV 01735 (GBD)
     CARRILLO HUETTEL LLP, LUIS J.
6    CARRILLO, WADE HUETTEL,
     GIBRALTAR GLOBAL SECURITIES,
7    INC., WARREN DAVIS, BENJAMIN
     T. KIRK, JAMES K. HINTON,
8    LUNIEL DeBEER, DYLAN BOYLE,
                     Defendants
9
     ------------------------------x
10                                       New York, N.Y.
                                         October 21, 2014
11                                       11:15 a.m.

12   Before:

13                   HON. GEORGE B. DANIELS

14                                       District Judge

15                        APPEARANCES
     SECURITIES and EXCHANGE COMMISSION
16       Attorneys for Plaintiff
     KEVIN P. O'ROURKE
17   ROBERT A. GIALLOMBARDO

18   SECURITIES and EXCHANGE COMMISSION
         Attorneys for Plaintiff
19   TODD D. BRODY
     JOSHUA M. NEWVILLE
20   KATHERINE STARR BROMBERG

21   VENABLE LLP
         Attorneys for Defendant Carrillo Huettel LLP
22   WILLIAM H. DEVANEY
     ADAM G. POSSIDENTE
23

24   PECKAR & ABRAMSON PC
         Attorneys for Defendant Carrillo
25   THOMAS J. CURRAN

EalQsecC

APPEARANCES CONTINUED:


GAGE SPENCER & FLEMING, LLP
     Attorneys for Defendant Huettel
WILLIAM B. FLEMING

DeFEIS O'CONNELL & ROSE PC
     Attorneys for Defendants Gibralter and Davis
PHILIP CANNING PATTERSON

HERRICK FEINSTEIN LLP
     Attorneys for Defendant Kirk
STEVEN D. FELDMAN

SALLAH ASTARITA and COX LLC
     Attorneys for Defendant Hinton
MICHAEL HANDELSMAN

HOLLAND & KNIGHT LLP
     Attorneys for Defendant Boyle
CHRISTINE TRAMONTANO
STEPHEN WARREN

LAW OFFICE OF DAVID GOUREVITCH
     Attorney for Defendant DeBeer
DAVID U. GOUREVITCH

EalQsecC

1              (In open court; case called)

2              THE DEPUTY CLERK:  Would the parties please rise and

3    make their appearances starting with the SEC?

4              MR. BRODY:  Thank you very much, your Honor.

5              Good morning.  My name is Todd Brody.  With me are

6    Joshua Newville and Katherine Bromberg in the case SEC v.

7    Carrillo Huettel.

8              MR. O'ROURKE:  Kevin O'Rourke in the case for the SEC

9    in the case SEC v. Gibralter Global.

10             THE COURT:  Good morning.

11             MR. DEVANEY:  Good morning, your Honor.  William

12   Devaney, Venable LLP on behalf of Carrillo Huettel, the law

13   firm.

14             MR. PATTERSON:  Good morning, your Honor.  Phi8lip

15   Patterson, DeFeis O'Connell & Rose here for Warren Davis and

16   Gibralter in the two actions naming them.

17             MR. FELDMAN:  Steven Feldman from Herrick Feinstein on

18   behalf of Benjamin T. Kirk.

19             MR. CURRAN:  Thomas Curran on behalf of Luis Carrillo.

20             MR. FLEMING:  William Fleming on behalf of Wade

21   Huettel.

22             MR. GOUREVITCH:  David Gourevitch on behalf of

23   defendant Luniel DeBeer.

24             MS. TRAMONTANO:  Christine Tramontano of Holland &

25   Knight on behalf of Dylan Boyle.

EalQsecC

1          MR. HANDELSMAN:  Michael Handelsman on behalf of the

2     defendant James Hinton.

3          THE COURT:  Thank you.

4          Let me start with the SEC.  What is the status from

5     your perspective and how do you want to proceed?

6          MR. BRODY:  Thank you, your Honor.  We are in the

7     middle of conducting discovery.  I should say, we are sort of

8     towards the beginning of conducting discovery.  We had served

9     discovery requests on a number of defendants.  Some of them

10    asked for additional time to engage in settlement discussions.

11    We have had initial settlement discussions.  Three of the

12    defendants in this case -- Hinton, Kirk and DeBeer -- have

13    asserted Fifth Amendment privileges in different formats.

14    Pacific Blue and Trade Show are in default in this case, and we

15    are going to be moving for a default judgment against them

16    shortly.

17         We have partial judgments against two of the

18    defendants, John Kirk and Dylan Boyle, and we have another full

19    settlement against Mr. Franklin.  I would say that with

20    respect to some of the defendants there are some discovery

21    issues that we have with them or questions at least about their

22    productions.  We know that your Honor has assigned a magistrate

23    with respect to the SEC v. Gibralter case, Magistrate Judge

24    Francis, and we would suggest to your Honor that it would also

25    make sense to assign Magistrate Judge Francis to this case for

EalQsecC

1   all discovery disputes.  We think that would make sense, so in

2   that sense we don't have to come back to your Honor every time

3   we have a dispute.

4           Our view is that our intention is to start taking

5   depositions fairly soon.  Your Honor, I am sure, knows that

6   there are a lot of foreign defendants in this case as well as

7   foreign witnesses.  Very few of those foreign witnesses that we

8   see are in countries that are signators to the Hague

9   Convention, so discovery is going to be difficult or obtaining

10  discovery is going to be difficult with respect to a lot of

11  these potential witnesses, but we are working to try to find

12  ways to take some of those depositions.  I think there are some

13  depositions, particularly of some of the defendants, that we

14  would anticipate taking fairly soon.

15          We note that one of the defendants in this case, their

16  counsel has made a motion yesterday to withdraw from the case.

17  We have been informed by several other defendants that their

18  counsel are also considering withdrawing, but there is nothing

19  to say about that until they have actually moved.  We don't

20  oppose the request for the Venable Law Firm to withdraw from

21  their representation of the law firm Carrillo Heuttel, but we

22  have a concern that the documents of Carrillo Heuttel, the law

23  firm, will kind of disappear into the vapor once they no longer

24  have a counsel in this case.

25          We also have concerns that even during the

EalQsecC

1    investigation documents that were relevant to this case which

2    include ledgers for subaccounts were destroyed.  They certainly

3    have gone missing.  So we would request, your Honor, that with

4    respect to the motion that your Honor put into place a

5    preservation order that would assign responsibility to the two

6    partners, Mr. Carrillo and Mr. Huettel to be responsible for

7    the documents of Carrillo Heuttel and to maintain and preserve

8    all of those documents.  We think that an order should be

9    entered with respect to that.  It's unclear to me sitting here

10   or standing here today what their obligations would be under

11   California law to preserve the documents of that defunct law

12   firm.  So I think that a preservation order would be

13   appropriate.  We are happy to submit a draft preservation order

14   to counsel representing the law firm Carrillo Heuttel as well

15   as to Mr. Carrillo and Mr. Huettel and see if we can reach some

16   type of agreement.  If we can't reach an agreement, then to be

17   able to simply submit that preservation order to the court, but

18   we would request that the Venable Law Firm not be excused from

19   this case until that preservation order has been put into place

20   since in our view the only responsible party right now for the

21   law firm Carrillo Heuttel is their counsel.  We think that

22   should be a condition, your Honor.

23        I think that is where we are with respect to this case

24   right now.  Like I said before, I think discovery is starting

25   and we are going to start taking depositions soon, your Honor.

EalQsecC

```
 1              THE COURT:  When do you think it makes sense for us to

 2    meet again?

 3              MR. BRODY:  I think that in January would make sense.

 4    I'm not saying that discovery will be concluded by January, but

 5    I think that we will be able to give your Honor a better sense

 6    of where we are and how long we think discovery is going to

 7    take in January.

 8              THE COURT:  Mr. Devaney, what is your position at this

 9    point?

10              MR. DEVANEY:  Thank you very much, your Honor.

11              We would certainly ask the Court to grant our motion

12    to withdraw for a long period of non-payment and running up

13    significant receivables.  With respect to the documents, I

14    think this is the problem when a defunct law firm with two

15    principals who are also defendants are sued.  Certainly, I

16    would defer to Mr. Curran and Mr. Fleming as to the

17    preservation order that their clients would have to sign.

18              As far as Venable is concerned, we are ready and

19    willing to turn over the documents in our possession and

20    control to whomever the Court orders should receive the

21    electronic databases and other documents in our possession.

22              THE COURT:  My question is whether or not it is your

23    request that you -- well, what is your understanding as to what

24    the status is with Carrillo Huettel if you withdraw.

25              MR. DEVANEY:  I'm not sure I understand the question.
```

EalQsecC

1    The status of the documents, your Honor?

2            THE COURT:  No.  The status of their defense of the

3    case.

4            MR. DEVANEY:  Well, again, your Honor, here we have a

5    two-principal law firm in which both of the principals are

6    named as defendants.

7            THE COURT:  So you don't anticipate at this point that

8    you are going to be substituted with some other attorneys in

9    the wings to represent and defend on behalf of the law firm?

10           MR. DEVANEY:  That's correct.  I have received no

11   communication or instruction along those lines, your Honor.

12           THE COURT:  Then let me hear from Mr. Curran.

13           MR. CURRAN:  Good morning, Judge.

14           The Carrillo Heuttel firm was brought in, Judge, at a

15   time immediately after my client invoked the Fifth Amendment in

16   the investigatory stage of this matter because subpoenas were

17   immediately issued, and I had been acting -- my predecessor

18   counsel had been on behalf of the firm in order to respond to

19   the SEC's process.

20           At that time I advised the SEC while I can't wear both

21   of those hats any more, with one taking five and the other not

22   having five to take.  At that point we asked for the Venable

23   Law Firm and Mr. Devaney and all that come with a firm like

24   Venable, and certainly Mr. Devaney, to come in in order to

25   provide some comfort to all.  We, frankly, regarded that as a

1   responsible action to take.

2           Prior to yesterday, it was our understanding from

3   Mr. Devaney that the SEC did not oppose his motion to withdraw,

4   which makes sense.  Lawyers should not be working for free.

5   That said, we learned yesterday of what I will call the

6   conditional consent or conditional opposition, depending upon

7   how you look at it.

8           I am concerned about a statement I was informed of

9   that the SEC has concerns, I'll call them, about document

10  preservation throughout this matter, and I am including in that

11  the investigative stage.  To ask anybody to come in when there

12  is no money to hire a replacement, much less purport to replace

13  a firm like Venable and Mr. Devaney in particular --

14  Mr. Fleming and I yesterday did reach out to a former

15  prosecutor/retired judge who is of counsel to a law firm here

16  with a proposal that perhaps that person could act as a

17  custodian of records.

18          As we said at the motion to dismiss, Judge, as to the

19  defense of the law firm, it is kind of part and parcel to the

20  defense of the principals of that now defunct law firm which

21  was defunct when it was sued.  It is kind of a hypothetical

22  thing insofar as the defense of the law firm which is

23  judgment-proof in any case, and doesn't exist.  Insofar as

24  there is a defense to be proffered for that, it will be part

25  and parcel of the defense of Mr. Carrillo and Mr. Huettel.

EalQsecC

1            So I think that they remain -- I'm not the plaintiff,

2    so I don't control them and their status as being a defendant

3    in this case.

4            THE COURT:  Who has custody and control of the law

5    firm's documents?

6            MR. CURRAN:  My understanding is that the Venable firm

7    does.

8            THE COURT:  If they withdraw, then who has?

9            MR. CURRAN:  Well, we are trying to bring someone in

10   to act as the custodian for those records.

11           THE COURT:  In the meantime?

12           MR. CURRAN:  In the meantime which have -- I learned

13   of this yesterday, Judge.  So as soon as I know, I would

14   provide that information to the SEC and to the Court.

15           THE COURT:  Is there an office?

16           MR. CURRAN:  Yes.  This person is at a law firm.  An

17   office of Carrillo Heuttel?

18           THE COURT:  Yes.

19           MR. CURRAN:  No, they're gone, Judge.

20           THE COURT:  So where are the documents?

21           MR. CURRAN:  They're at the Venable firm, I believe.

22           THE COURT:  Are they at the firm itself, all of the

23   documents that were in the law firm?

24           MR. BRODSKY:  That's not correct.

25           MR. DEVANEY:  Yes, your Honor.  We have an electronic

EalQsecC

database of documents containing 1.4 million electronic

documents which was the entire electronic database.  At the

time we were hired, we were responding to two subpoenas from

the SEC.  With respect to hard copy documents, we have a

smaller set that were potentially relevant to those subpoenas.

We do not have every piece of paper that existed within the law

firm.  What we do have is this large electronic database and a

smaller subset of hard copy documents.

            THE COURT:  Who has the larger subset of hard copy

documents?

            MR. DEVANEY:  I don't know, your Honor.  I don't know

the answer to that.  This is what we have.

            MR. CURRAN:  I do not.

            THE COURT:  Is there another set of hard copy

documents?

            MR. BRODY:  Your Honor, this is the problem, which is

that law firms generate a lot of paper, and some of those

documents are electronic.  The Venable firm went in and took a

snapshot of all the electronic documents; but as far as we can

tell, it is unclear to us, and they have not been able to

answer the question to us, of what about the paper documents

that that firm had because, frankly, the document request that

we served on the law firm, as well as on the individual

defendants, are broader than what we asked for during the

investigation.

EalQsecC

1          So it is our belief that there are additional

2     documents that are responsive beyond those that were produced

3     by the defendants during the investigation and that is why it

4     is important for these hard documents -- I mean, if they're

5     gone already, your Honor, then I guess shame on us because we

6     thought someone was being responsible here and was going to

7     make sure that documents were going to be preserved in this

8     case because that's the law.

9          So if documents are already gone, if the files of the

10    law firm are gone, your Honor, well that raises its own issues;

11    and maybe Carrillo and Huettel, the individual partners, are

12    responsible for that already because as counsel is pointing

13    out, this is a two-principal law firm, and maybe they're

14    responsible for any spoliation that has taken place, your

15    Honor.

16         We still don't know the answer to that question and

17    that is why we have asked this Court today that a preservation

18    order be put into place.

19         THE COURT:  Wait.  Wait.  Wait.

20         Other than a preservation order, which would apply to

21    the firm, obviously, and to the two partners of the firm and

22    the Venable firm, what else --

23         MR. BRODY:  That is our only objection, your Honor.

24         THE COURT:  What else do you need.

25         MR. BRODY:  Otherwise, I have no problem with Carrillo

EalQsecC

1   Heuttel.

2          MR. DEVANEY:  Your Honor, as far as our firm we would

3   anticipate turning over everything that we have the 1.4 million

4   document database and any other hard copy documents to whomever

5   the Court orders.

6          THE COURT:  Well, I don't think that you should turn

7   that over to anyone without a court order.  I think you should

8   preserve documents even if you are relieved.  If you make an

9   application to the Court on notice to the SEC that you want to

10  turn them over to a third party or to another party in this

11  case, then I want to know that, but it's not going to happen

12  until I say that that should happen.  I would expect that I

13  will sign a further preservation order, but I will order today

14  that all documents that are firm documents be preserved by

15  whomever has custody of those documents.  It's a simple order

16  that everybody should and can comply with.

17         MR. FLEMING:  William Fleming for Mr. Huettel.

18         Last night for the first time we heard about this

19  issue, and we have been scrambling in the very short period of

20  time we have had before this conference to try to figure out --

21  which we don't have full answers for, but let me say what I do

22  know.

23         This case started in 2010 when subpoenas were received

24  by the firm before my participation in this case.  Even before

25  Mr. Curran's participation in this case, another lawyer

EalQsecC

1    represented the firm and received a subpoena and responded to

2    the subpoena.  Also received a subpoena to the Bank of America

3    for the firm's trust account records, which it voluntarily

4    produced subject to certain privileged objections or

5    non-related clients, non-Pacific Blue related clients.  The

6    Court overruled the objection and all those documents were

7    produced.  There have been, by the way, a total of nine

8    subpoenas served on the firm and its partners.  This was in the

9    investigation phase.  All of those documents were produced

10   subject to privilege.

11         Now, the privilege issue is a separate issue.  The SEC

12   has never vindicated what it has suggested is that there is no

13   privilege attaching these documents because of a crime fraud

14   exception.  They have never vindicated that issue.  We have

15   been asking them to, quite frankly, but until that's been

16   vindicated, of course, as lawyers we can't turn those over.

17         That brings us to Venable's participation in this case

18   which occurred in sometime, I believe it was, May 2012 when the

19   SEC indicated that they thought it would be a good idea if the

20   firm hired separate counsel at, its own expense of course, to

21   represent the firm and deal with document issues, quite

22   frankly.

23         At that point in time the firm, Carrillo Heuttel, was

24   on its way out for obvious reasons.  It was under investigation

25   with a cloud over its head, and eventually sometime in 2012 it

EalQsecC

1   stopped doing business.  Before that time though, we took

2   special steps to secure documents of the firm.  Venable came in

3   and made a forensic copy of all the electronic records which it

4   still has.  There is no question that they still have it, and

5   the notion that they or any other lawyer needs a preservation

6   order is surprising to me because the lawyers I know take their

7   responsibility seriously not to destroy records.

8        Venable also reviewed all of the hard copy documents,

9   and contrary to the SEC's comment that law firms keep lots of

10  records, I personally saw the storage room of records for the

11  firm.  It was a closet maybe as big as these two tables put

12  together with shelves.  Those documents were reviewed by

13  Venable for relevance to the SEC's outstanding nine subpoenas.

14  They gathered up the relevant documents; they produced them.

15       The non-relevant documents having nothing to do with

16  Pacific Blue were gathered up -- and to my understanding,

17  finding out what I could as of last night because, quite

18  frankly, I haven't dealt with document issues since 2012 when

19  Venable came into the case, other than Mr. Huettel's own

20  personal records which have been produced as well -- packed up,

21  stored and put away.

22       I want the record to be clear that there shouldn't be

23  this notion out there that documents have disappeared, been

24  destroyed or anything of the sort.  In fact, quite the

25  contrary.  We have taken extra special steps to be sure

EalQsecC

1    everything is preserved, and, by the way, produced already.

2              Now, the SEC says that its current document request in

3    this case is broader than the nine subpoenas it served.  Well,

4    it took actually, quite frankly, communications apparently

5    between Venable and the SEC to actually identify how they

6    differ at all because, at not just first blush, but second

7    blush, they appear absolutely identical.  There are in fact,

8    upon being told, a few added names that are different from what

9    had appeared in the nine subpoenas that occurred in the

10   investigation phase.  Those names, by the way, I understand

11   from other counsel, have appeared in document requests to other

12   defendants in this case.  They've asked the SEC to identify

13   these people, whether they were investors in Pacific Blue or

14   whether there is a contention there is a relation to Pacific

15   Blue.  I'm told the SEC has not responded to that.  Quite

16   frankly, we are at a loss to determine what relevance at all

17   these names have to do with the case before your Honor.

18             I did want to get up and speak to clarify the record

19   to remove a little of the drama, quite frankly, from the SEC's

20   presentation and just let your Honor know in my own view I

21   would oppose a preservation order because, as Mr. Curran said,

22   we are trying to get a retired judge to take custody of these

23   documents.  The notion that he or some other responsible lawyer

24   is going to allow documents to disappear or going flying in the

25   wind or whatever dramatic language you want to use is, to my

EalQsecC

1    mind, fanciful.  I think the obligations on lawyers are enough.

2           THE COURT:  Well, I would agree with you except that

3    your clients are lawyers.  What's at issue here involves human

4    beings.  So, lawyers or non-lawyers, you're absolutely right

5    that I should have to issue no order for any lawyer to preserve

6    these documents, but I do think it is appropriate, given the

7    interest of your clients, to issue an order to your clients

8    that if they have such documents, that they should understand

9    that they would be in violation of that order if they didn't

10   preserve those documents, and that would be appropriate.

11          You may have a personal offense to a preservation

12   order, but I don't know what your legitimate objection is to a

13   preservation order.

14          MR. CURRAN:  Judge, if I have any objection at all, it

15   is to learning about this late yesterday.  That would be --

16   stop, Mr. Brody.  Let me finish, please.

17          There is an old line, Judge, "I trust my mom but I cut

18   the cards."  I have no problem with the preservation order per

19   se.  I do understand from the Venable lawyers that there was at

20   least an implicit threat that they could be held responsible

21   for what the SEC has not told us they find not having been

22   produced to use the magic word spoliation, and to talk to

23   someone to come in to be the custodian of records when the SEC

24   is moving beyond -- and actually looking at the lawyers who

25   have been doing their best to preserve the record here, I don't

EalQsecC

```
 1   want to be next on their list.  And no one else does either.
 2   OK?
 3            We have had seven months here since the motion to
 4   dismiss was decided, and we do not have a meaningful
 5   advancement of this plaintiff's discovery burden not one bit --
 6   not on spoliation, not on the attorney-client privilege, not on
 7   anything.
 8            So I do, Judge, take it personally when I perceive
 9   that I might be next on their list in order for them to have an
10   explanation why they are not moving this case.  I do feel very
11   strongly about that, Judge.
12            THE COURT:  That's fine and dandy, and I understand
13   the parties position.  But, quite frankly, that doesn't advance
14   anything that I have to decide today.
15            The bottom line is we all need to leave today with the
16   same understanding that all documents will be preserved in
17   possession of anyone, all right?  We understand that.  That is
18   the understanding that I want.  I don't anticipate that I have
19   to do anything other than say that.  But, clearly, if something
20   happens contrary to that, the responsible party will be held
21   responsible for violating my order to preserve the documents.
22            Now, I don't anticipate that's going to happen, but I
23   want it very clear that that would be the consequence.  So the
24   fact is that the preservation order only should offend those
25   who think that somehow it applies to them.
```

EalQsecC

1          MR. CURRAN:  No, no, Judge.  Here is the problem.

2     Here is the risk, Judge.  OK?  I personally have tried to act

3     since the investigative stage in this case in order to preserve

4     and protect as best as I know and provide a level of comfort,

5     as best as I know from my conduct in this case.

6          THE COURT:  Right.  But this case doesn't have

7     anything to do with you personally.

8          MR. CURRAN:  That's the next step though, Judge.

9     Anybody who comes –– why would anybody take possession of these

10    documents right now?  I wouldn't.  They're already saying

11    there's spoliation.

12         THE COURT:  But what do you want me to do about that,

13    literally?  You can vent, but I'm trying to advance the issue.

14    I am not interested in the parties venting or taking offense or

15    whatever.

16         MR. CURRAN:  I'm not taking offense.

17         THE COURT:  What is clear to me is that right now I

18    expect the documents that the Venable firm has to stay at the

19    Venable firm and not go to anyone else.

20         MR. CURRAN:  Without question.

21         THE COURT:  I am confident based on the conversation

22    we just had that that will happen.  I also expect that if your

23    clients are personally in possession of any documents that they

24    will preserve those documents and not dispose of those

25    documents in any way.

EalQsecC

1              MR. CURRAN:  They have been so instructed.

2              THE COURT:  And appropriately instructed.

3          I don't expect that anyone else in this room I have to

4    instruct to that extent because it is fairly obvious what

5    everybody's obligation is, and I'm assuming every single lawyer

6    in this courtroom right now is meeting their obligation.  That

7    is not the issue.

8          Clearly, I expect the documents to be preserved, the

9    status quo with regard to what documents exist and where those

10   documents are to not change unless it's changed upon

11   application to this court on notice to the SEC and by order of

12   this court.  That's what I expect.  I will sign a proposed

13   preservation order to that effect for the parties to have that

14   responsibility.  The parties, OK?

15         I am not concerned about the lawyers in this room.  I

16   don't expect to have to address that issue with regard to the

17   lawyers in this room.  Quite frankly, if I have to address that

18   issue with regard to any of the lawyers in this room, the

19   consequences for any lawyer is not any less whether I issue a

20   preservation order or not issue a preservation order.  So let's

21   be clear about where we are.

22         I expect you to speak to your client.  I expect you to

23   tell the client to preserve these documents if there are any

24   documents that exist.  I am assuming that there are no further

25   documents that we have been talking about; that the Venable

EalQsecC

1    firm has the bulk of the documents; that whatever documents

2    exist or don't exist or wherever they are and if someone finds

3    them, they will be smart enough to know that we need to just

4    hang on to these documents and not do anything else with these

5    documents.  So that is clear.

6         I don't need to debate this out among the parties, and

7    I don't need for you to throw mud at each other.  I just want a

8    clear understanding that that is the way we are going to

9    proceed so we can move this forward.

10        If somebody is going to come in and either represent

11   the Venable firm or somebody is going to come in and decide

12   that they would like to take custody and control or be the

13   lawyers to preserve these documents, that's fine and dandy.  I

14   don't have any problems with that.  I see no personal

15   consequences for anybody that is any different than the

16   personal consequences to any lawyer if they decide they want to

17   start shredding documents.

18        So we don't even need to have that discussion.  I

19   don't even know why we're having that discussion.  It seems to

20   me that -- I'm not sure other than, as I say, having you vent,

21   is there something else you want me to do other than that?

22        MR. CURRAN:  I think you've done everything that needs

23   to be done on this record.  I think the lawyers in this room

24   have done everything that they can do as to any issues that the

25   SEC may have.

EalQsecC

1              THE COURT:  I think so too.

2              MR. CURRAN:  But here is the thing.

3              THE COURT:  I have no reason to think otherwise.

4              MR. CURRAN:  From my perspective, not having ever been

5      in possession, custody and control of this universe of

6      documents, OK, having brought in an outstanding firm and lawyer

7      to do so, I have great hesitancy about coming anywhere near

8      that if there is a presumption by the SEC that there is

9      something wrong with the universe of documents going into it.

10             THE COURT:  Are you surprised by such a presumption

11     from the SEC?  They don't know where the documents are.  They

12     could presume whatever they want to presume.  I have no basis

13     to conclude that.  Your position is that's not the case.

14     That's fine.  But the fact is that I want every party in this

15     litigation to now understand that they must preserve documents.

16     If there is any question about that, I am not particularly

17     concerned about any party being insulted that I have to tell

18     them that and there are serious legal consequences if that's

19     not the case.  So we can move beyond this.

20             MR. CURRAN:  And the record is clear, and the order

21     from the bench is an order whether it's in writing or

22     otherwise.  That is basically my position.

23             THE COURT:  That's fine.  I will give them an

24     opportunity to propose a preservation order.  If you have an

25     objection to the language of that order, that's fine, but the

EalQsecC

1    preservation order should be consistent with what this record

2    is.  I will sign such an order, and anybody who has personal

3    custody and control and they have some personal interest in

4    this case or any of the parties are acting on their behalf

5    unless they're officers of the court, are going to be

6    controlled by that order. If they're officers of the court,

7    they need not be controlled by that order because I have other

8    ways to deal with that if there is a problem.

9         MR. CURRAN:  I just don't want to be on the receiving

10   end of those ways, Judge.

11        THE COURT:  I don't anticipate that that is going to

12   happen.

13        MR. CURRAN:  I am going to make sure that doesn't

14   happen, Judge.

15        THE COURT:  Quite frankly, I am anticipating in the

16   face of an appropriate preservation order to the parties or

17   those individuals who may be acting on their behalf that it

18   will be real clear what the instructions are from the court,

19   whether they're lawyers or non-lawyers in this case.

20        So we can get past this and what I intend to do is I

21   intend to consider the preservation order.  If there are no

22   objections, I will sign it.  If there are specific legitimate

23   objections, I will consider them, and otherwise sign the

24   appropriate order consistent with this record.

25        I will also grant the motion to withdraw under the

EalQsecC

1   conditions as we've discussed it, and I am going to assign both

2   cases to Magistrate Judge Francis to start moving this case

3   forward with regard to discovery on some real substantive basis

4   so we can move forward with this litigation.

5           Now, since the law firm itself is no longer a real

6   party in interest here, we can address that differently.  If

7   the documents are to be turned over to the -- if the documents

8   are to be turned over to some substitute attorney or firm, then

9   make that application, but otherwise I am going to anticipate

10  that unless that happens, to the extent that the firm is going

11  to turn over these documents to any other party, they are going

12  to turn it over to all parties.  They are going to make it

13  available to all parties.  You are not just going to turn it

14  over to one of your clients.

15          MR. CURRAN:  You're not talking about me.

16          THE COURT:  I just want to make it clear.  Unless

17  somebody wants to step in their stead --

18          MR. CURRAN:  No one wants to do that.

19          THE COURT:  And preserve these documents.  If they

20  want to get rid of the documents and they throw the documents

21  on the table, then everybody gets access to these documents.

22  Otherwise, somebody will come in and preserve some right that

23  they may have to these documents.

24          MR. CURRAN:  What we are trying to work on, Judge,

25  when we found out about this late afternoon yesterday afternoon

EalQsecC

1    was to find a custodian for these records.  There is not going

2    to be a lawyer to replace Venable as if they were replaceable

3    there is not going to be one simply because there is no money

4    for it.

5            THE COURT:  I understand.

6            MR. CURRAN:  So the best we can hope for is a

7    custodian.  We have contacted a person whose integrity is above

8    reproach and that is what we intend to pursue.

9            THE COURT:  I am not quite sure what the role of a

10   custodian is going to be in this case.  Quite frankly, the

11   reality is that, look, if the other parties and their lawyers

12   want access to these documents, quite frankly, I can't think of

13   a circumstance where you get to have access to the documents

14   and nobody else does under these circumstances.  So my

15   suggestion is either get yourself a custodian or get together,

16   pay for the cost of production, give one side to -- a set of

17   documents to the defense and one set of documents to the SEC

18   and be done with it.

19           MR. DEVANEY:  Your Honor, if I could be heard on the

20   practicalities of this for a moment.  I think the problem with

21   making this database available to everybody is there is

22   attorney-client privilege material in there, not just with

23   respect to this investigation but their lawyers and --

24           THE COURT:  Unless you tell me -- that is their

25   problem; that's not my problem.  What are they supposed to do

EalQsecC

1    if the documents are not in their custody and control?  They're

2    not paying for the firm to be represented.  You know, as far as

3    you're concerned, you're through.  You can dump them in the

4    garbage as far as I'm concerned if nobody wants the documents.

5    But obviously you have documents in which they -- if there is a

6    request to you for those documents by the SEC, I am not sure

7    under what circumstances they are going to be able to determine

8    prior to that that they have a privilege to assert.

9              Mr. Curran, you said something?

10             MR. CURRAN:  It's not our privilege to assert.

11             THE COURT:  That's exactly what I just alluded to.

12             MR. GOUREVITCH:  It's my client privilege to assert,

13   and we have consistently and vigorously asserted.  And before

14   we get through --

15             THE COURT:  Your client is who?

16             MR. GOUREVITCH:  Is Mr. DeBeer.

17             THE COURT:  OK.

18             MR. GOUREVITCH:  It is his privilege to assert.  We

19   have asserted it.

20             THE COURT:  Why is it his privilege to assert if it's

21   not his document?

22             MR. GOUREVITCH:  He was the CEO of trade show and the

23   chairman of Pac Blue and he was represented in those capacities

24   by the Carrillo Heuttel law firm who provided him with advice

25   in his capacity.

EalQsecC

1          THE COURT:  Then I suggest you do something to try

2     figure out what documents you want to assert a privilege to.

3          MR. GOUREVITCH:  We have asserted the privilege to all

4     documents in the law firm's custody, possession and control

5     that are covered by the privilege relating to any communication

6     or any privileged matter that they have relating to trade show

7     and Pac Blue and Mr. DeBeer and we have consistently asserted

8     it.

9          THE COURT:  As to the millions of documents I am not

10    sure which one of those.

11         MR. CURRAN:  That's another problem, Judge.  The law

12    firm didn't just have Pacific Blue trade show as their clients.

13    The law firm has been defunct now for almost three years.

14    There are a lot of practical problems here.

15          I have reached out to certain people who long ago were

16    defendants in this case.  The SEC told me, well, we think the

17    crime fraud exception applies.  I went to the effort of

18    reaching out to particular client I knew I could contact and

19    said do you still assert the privilege because if you don't

20    then I can hand this stuff out.  All right.  The ones who

21    responded to me, which the responses which I provided to the

22    SEC at that time, they all asserted the privilege and they

23    still do even the parties in this case.  That is just this

24    case.  This was a law firm with -- unless the argument is --

25    with a lot of other clients, so if we hand over you know I

EalQsecC

1   don't know the morass -- the exit from this morass Judge.

2           THE COURT:  All I can say to you is if you want to

3   assert a privilege to documents that are not in your possession

4   and no longer in your possession of any lawyers who have the

5   obligation to protect that privilege then you'd better figure

6   out an efficient process in order to do that.  And the

7   efficient process isn't carte blanche saying "I object to the

8   SEC seeing any documents that the law firm" --

9           MR. CURRAN:  No one is saying that that's the idea

10  behind --

11          THE COURT:  It is being said.

12          MR. CURRAN:  Not by me.

13          THE COURT:  It is being said.  No one has

14  identified -- there is no privilege log.

15          MR. CURRAN:  There is a privilege log.

16          MR. BRODY:  We have not gotten a privilege log in this

17  litigation from either Mr. Carrillo or Mr. Huettel, your Honor.

18  They may have provided one earlier during the investigation but

19  they did not provide us with any a privilege log.

20          THE COURT:  I can't have my court reporter taking down

21  two people yelling at each other.  Look, this is a nice

22  academic debate, but it means absolutely nothing with regard to

23  what's before me right now.  I made clear to you how I expect

24  you to proceed.  If you have a solution to either a request for

25  documents or a review of documents or assertion of a privilege

EalQsecC

1    against other documents or an efficient way to address what's

2    going to be produced and what's not going to be produced and

3    what's appropriate to withhold, then I suggest that you speak

4    to Judge Francis about that, you come up with a solution and

5    you be ready to propose a solution.

6           Otherwise, I'm going to leave it up to Judge Francis

7    to determine how he is going to decide what is to be produced

8    by whom in response to what request.

9           If you have a privilege to assert, you'd better be

10   prepared to efficiently and effectively be able to demonstrate

11   that privilege other than just standing in a room and saying

12   "Anything that's got my client's name on it, I think that I am

13   going to assert privilege."

14          MR. CURRAN:  No one has done that.  Let's be clear.

15   The idea behind the custodian, Judge, was that anyone who would

16   have an interest -- on behalf of Mr. DeBeer because -- let's be

17   clear, in the investigative stage, what I have I have produced

18   subject to a privilege log which I reviewed again to make sure

19   that my predecessor --

20          THE COURT:  Not in this litigation.

21          MR. CURRAN:  But, Judge, I don't have any other

22   documents.

23          THE COURT:  Mr. Curran.  Slow down.  Slow down.  This

24   is starting to be a useless debate here.  I understand what

25   your position is.  I am just making clear that you need to

EalQsecC

1    address this issue if you want it effectively addressed.  If

2    you want to sit and wait until you guys have to fight about it,

3    that's fine and dandy, but there is nothing else I can do for

4    you.  There is no further reason to continue this debate about

5    an issue that does not exist.  All right?  You'd better figure

6    out what you want to do with these documents.  That's your

7    first decision.

8              MR. CURRAN:  I don't have them.

9              THE COURT:  You figure out what you want to do with

10   them.

11             MR. CURRAN:  I was going to give them to a custodian.

12   Anyone who might have an interest in them can go talk to the

13   custodian; not me.

14             THE COURT:  Isn't that what I just said?

15             MR. CURRAN:  All right.

16             THE COURT:  Let's put this to rest.  Decide what you

17   want to do with these documents.  If it's nothing, turn your

18   back on it and let others solve it.  If you have a solution, I

19   suggest the parties in here who have an interest in it should

20   propose that solution.  Otherwise, whatever debate there is

21   with regard to what has to be produced during discovery and by

22   whom, that's going to be resolved by Magistrate Judge Francis,

23   and if you can't give him a helpful solution to that problem,

24   he will give whatever solution he thinks is appropriate to that

25   problem.  Let's move forward on this.

EalQsecC

1              At this point, other than that -- and we come back to

2      the same question -- this is what I intend to do.  All right.

3              Other than that, what is the process and timing?

4      Where are you going to go from here and what are you going to

5      do next?

6              MR. CURRAN:  We'd like a trial date.

7              THE COURT:  That would be a little awkward at this

8      stage of the proceeding, wouldn't it?  Mr. Curran, look, let's

9      be realistic.  If you have a helpful suggestion to me, I will

10     be prepared to listen to it.  If all you have to suggest is "I

11     want a trial date," then I don't need to discuss it any

12     further.  You're wasting my time.

13             MR. CURRAN:  I don't mean to waste your time.

14             THE COURT:  Well, you are.  I don't need to discuss a

15     trial date.  What does the SEC intend to do?  Do you have

16     something else you intend to do before trial or you want a

17     trial date?

18             MR. BRODY:  Absolutely, your Honor.  We are going to

19     start taking depositions in this case.

20             THE COURT:  When do you intend to do that?

21             MR. BRODY:  We are going to start noticing depositions

22     within the next month.

23             THE COURT:  To take place when?

24             MR. BRODY:  Well, that depends on the availability of

25     the parties as well as our availability to take these foreign

1   depositions that we talked about, your Honor.

2              THE COURT:   What month do you want to take these

3   depositions?

4              MR. BRODY:   We are going to start taking them probably

5   the of November, beginning of December and continue taking them

6   until they're done.   It's going to be a couple months, your

7   Honor, in order for us to take all of the depositions we are

8   going to take in this case.   And the discovery of this case,

9   your Honor, is coordinated with discovery in the other SEC

10  case, so there will have to be some coordination there, your

11  Honor.

12             THE COURT:   What I am going to do is I am going to

13  schedule a conference before me for the end of February, on

14  February 26 at 10:30.   Any of these issues or genuine disputes,

15  then you should raise them with Magistrate Judge Francis in the

16  meantime.

17             Otherwise, I expect you to move forward with complete

18  document production and start moving forward with depositions

19  so you could be in a position to tell me when discovery is

20  finished and whether you anticipate motions or we should be

21  talking about setting a pretrial order date and a trial date.

22             Am I supposed to assume, Mr. Curran, that you've

23  decided you're not making any motions in this case at this

24  point because you want a trial date?

25             MR. CURRAN:   Well, Judge, there are limited resources

 1  in this case.  I am not being paid right now either.  So I

 2  don't know how --

 3           THE COURT:  So, I assume you're waiving motions so you

 4  can get a trial date?

 5           MR. CURRAN:  I just want a trial date.  We will try

 6  the Pacific Blue Trade Show case and we'll try it now.

 7           THE COURT:  I think you can probably sit on the side

 8  and wait until everybody else is finished.  There's nothing

 9  else for you to do.  I will give you the earliest trial date

10  that everyone is available for trial.

11           Yes, Mr. Feldman.

12           MR. FELDMAN:  Steven Feldman on behalf of Ben Kirk, if

13  I may be heard.

14           I want to understand where things stand because I'm a

15  little confused about what's happened today.

16           On April 18, the SEC put in a joint discovery proposal

17  which, your Honor, there was one issue in dispute.  Your Honor

18  put in an order on April 21 clarifying that one issue in

19  dispute about a 26(a) disclosure.  That joint proposal says

20  that discovery is going to end, fact discovery, on March 31,

21  2015.  Is that what the plan is or are we now just going to

22  free-flow with no dates?

23           THE COURT:  That's the plan.

24           MR. FELDMAN:  Thank you, your Honor.

25           MR. BRODY:  Your Honor, just to be clear, that letter

EalQsecC

```
1    was submitted before parties in this case asked for us to put

2    off taking discovery until we're able to have what they call

3    meaningful settlement discussions with them.  So, to the extent

4    that we had a previous date and then we have done what certain

5    defendants in this case have asked us to do, we are obviously

6    reserving the right to come back and say, your Honor, we need

7    to take more time for discovery since we were acting at the

8    behest of certain defendants in this case.

9              THE COURT:  Again, I don't have to say the obvious.

10   That is the plan until and unless the parties agree to

11   something different or propose something different to the Court

12   and this Court orders something different.  That is the plan.

13             MR. GOUREVITCH:  Your Honor, if I may be heard.  This

14   is the second deadline for discovery that the SEC has proposed.

15   I believe they originally proposed a deadline of October 31,

16   which is next week.  Now we are on March 15.  And I understand

17   the delay, but now I start to hear the SEC is going to be

18   coming back and suggesting that that is just -- they basically

19   are telling you that they're likely to come back and ask for

20   more time.

21             THE COURT:  I'm likely not to give it to them if they

22   haven't reasonably and efficiently used the time that they do

23   have.  If they say they are going to start depositions

24   immediately, I expect a significant amount of progress to be

25   made; and if the schedule has to split, then somebody needs to
```

EalQsecC

```
1    tell me what it is that you've done, why that is all you can
2    accomplish and why you reasonably need more time and what time
3    is reasonable and how that time is going to be used.  This is
4    not a debate to have now.  That is always the case in every
5    case.
6          MR. GOUREVITCH:  Your Honor, all I ask is that it be
7    balanced against the burden it is creating on the defendants.
8    This case is now dragged out.  From the start of the
9    investigation, the case is four years old.
10         THE COURT:  What do you want from me other than my
11   sympathy?  Are you asking me to do something for you?  I just
12   said yes, that's the schedule.
13         MR. GOUREVITCH:  I'd like to join Mr. Curran and ask
14   for a hard trial date.
15         THE COURT:  You waiving all motions too?
16         MR. GOUREVITCH:  I will waive the motions.  I would
17   like a hard trial date and I am asking for a hard discovery
18   cutoff deadline that does not start to move for this case.
19         THE COURT:  You should be prepared for trial as early
20   as 60 to 90 days from the close of discovery.
21         MR. GOUREVITCH:  I would just like to make one last
22   request; that the discovery cutoff really is for March 31, and
23   that it doesn't start to roll further.
24         THE COURT:  What do you want me to do?  That's the
25   date.
```

EalQsecC

1           MR. GOUREVITCH:  Thank you, your Honor.

2           THE COURT:  There is no other date in front of me but

3      that date.  I expect the SEC to schedule its discovery

4      consistent with that.  Is there any reason why you can't do

5      that at this point?

6           MR. BRODY:  No, there isn't, but I just find it

7      amazing that counsel sits here and talks about our first

8      discovery --

9           THE COURT:  You are sitting here wasting my time with

10     this debate between the parties.  If you want to argue about

11     this, go outside and argue about it.  It is not going to change

12     a single thing that I have done in the last half hour with you.

13     If you want to argue about this, go argue about it, but

14     understand the way I am proceeding and what I expect from you

15     is to go forward, and proceed on these issues exactly the way I

16     discussed them and exactly as the status quo is.  I expect that

17     this case is going to be finished by that date unless for some

18     reason you reasonably can convince me that there is something

19     that could not have been done within that time period.

20          You are on a schedule that makes that time period just

21     as reasonable as it was when it was first set.  Unless the

22     parties start dragging their feet and they're not available for

23     your depositions, but I assume from your discussion, you might

24     be finished with depositions within the next 60 to 90 days.

25          I don't know what it is the SEC thinks that they need

EalQsecC

1    to find out beyond that they don't already know.  You're not

2    starting from scratch here.  It still seems to me to be a very

3    reasonable date to finish discovery within that time period.

4    If not, then you'd better start designing what you think is

5    necessary to get it within that time period, and if you

6    therefore don't have it, then I might give you an extension.

7    If it's your fault you didn't get it in that time period, I'm

8    not likely to give it to you.

9            So let's stay on this schedule.  Let's see where we

10   are in February.  If we are still in schedule, then in February

11   we will talk about setting a firm trial date, finalizing a

12   pretrial order at the close of discovery, and this case can be

13   tried within 60 to 90 days of that March date.

14           Is there anything else we need to address today?  I

15   will see you on that date.  See if you can work these issues

16   out.  Otherwise, raise them with Magistrate Judge Francis.  I

17   will see you at the end of February and see if we are on

18   schedule.

19           MR. BRODY:  Your Honor, we will submit preservation

20   order.

21           THE COURT:  Fax it to me and let the other side see it

22   and give them a day to let me know whether or not they object.

23           (Adjourned)

24

25