UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SECURITIES AND EXCHANGE COMMISSION,

                          Plaintiff,

            -against-                                    13 CV 2575 (GBD) (JCF)

CARILLO HUETTEL, LLP, et al.,

                          Defendants.

PLAINTIFF'S MOTION TO COMPEL

Todd D. Brody
Katherine S. Bromberg
Joshua M. Newville
SECURITIES AND EXCHANGE COMMISSION
Brookfield Plaza
200 Vesey Street
New York, NY 10281
(212) 336-0080 (Tel. Brody)
(212) 336-1324 (Fax Brody)
brodyt@sec.gov

# TABLE OF CONTENTS

PRELIMINARY STATEMENT       1

PROCEDURAL HISTORY       2

ARGUMENT       4

I.     DEFUNCT COMPANIES DO NOT HAVE A PRIVILEGE TO ASSERT     5

II.     EVEN IF THE PRIVILEGE STILL EXISTED, IT WAS WAIVED     8

A.     Objections (Including Privilege Objections) are Waived if not Timely Asserted     9

B.     Waiver of the Privilege by Asserting a Reliance on Counsel Defense     10

C.     Franklin Waived the Privilege for Pacific Blue     12

III.     THE CRIME FRAUD EXCEPTION APPLIES     13

CONCLUSION       18

## TABLE OF AUTHORITIES

### Cases

*Amusement Indus., Inc. v. Stern*, 293 F.R.D. 420, 428 (S.D.N.Y. 2013) .......................................16

*Catton v. Defense Tech. Sys.*, 05 Civ. 6954, 2007 U.S. Dist. LEXIS 84454
    (S.D.N.Y. Nov. 15, 2007), ........................................................................................................14

*Chevron Corp. v. Donziger*, 11 Civ. 0691, 2013 U.S. Dist. LEXIS 36353
    (S.D.N.Y. March 15, 2013) ......................................................................................................14

*City of Rialto v. U.S. Dept. of Defense*, 492 F. Supp. 2d 1193 (C.D. Cal. 2007) ......................7-8

*Cohalan v. Genie Indus.*, 276 F.R.D. 161 (S.D.N.Y. 2011) ..............................................................9

*Fleisher v. Phoenix Life. Ins. Co.*, 11 Civ. 8405, 2013 U.S. Dist. LEXIS 964
    (S.D.N.Y. Jan. 3, 2013) ..............................................................................................................9

*Freedman v. Weatherford Int'l Inc.*, 12 Civ. 2121, 2014 U.S. Dist. LEXIS 102248
    (S.D.N.Y. July 25), *recon. den.*, 2014 U.S. Dist. LEXIS 133950 (Sept. 12, 2014) ................15

*Gilliland v. Geramita*, 2:05-cv-1059, 2006 U.S. Dist. LEXIS 65546
    (W.D. Pa. Sept. 14, 2006) ..........................................................................................................8

*Gruss v. Zwirn*, 276 F.R.D. 115, 134-135 (S.D.N.Y. 2011), *rev'd, in part, on other
    grounds*, 09 civ. 6441, 2013 U.S. Dist. LEXIS 100012 (S.D.N.Y. July 10, 2013) ..................12

*Hollis v. O'Driscoll*, 13 civ. 01955, 2013 U.S. Dist. LEXIS 83885 (S.D.N.Y. June 11, 2013) ...13

*In re County of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) ..........................................................11, 14

*In re Fundamental Long Term Care, Inc., Debtor*, 8:11-bk-22258, 2012 Bankr.
    LEXIS 4843 (Bank. M.D. Fla. Oct. 9, 2012) ............................................................................7

*In re Grand Jury Subpoena Dated January 4, 1984*, 750 F.2d 223, 224-25 (2d Cir. 1984) ..........4

*In re Grand Jury Subpoena Dated March 20, 2013*, 13-Mc-189, 2014 U.S. Dist.
    LEXIS 91901 *28 (S.D.N.Y. June 24, 2014) ..........................................................................14

*In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032
    (2d Cir. 1984) ..........................................................................................................................15

*In re Omnicom Group., Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 60298
    (S.D.N.Y. Aug. 10, 2007) .........................................................................................................15

*Kadden v. Visualex, LLC*, 11 Civ. 4892, 2012 U.S. Dist. LEXIS 103791
    (S.D.N.Y. July 25, 2012) ..........................................................................................................11

*Lewis v. U.S.*, 02-2958, 2004 U.S. Dist. LEXIS 26680, *order aff'd*, 2005 U.S. Dist.
    LEXIS 14508 (W.D. Tenn. June 20, 2005) ..............................................................................7

*Lopes v. Vieira*, 688 F. Supp. 2d 1050 (E.D. Cal.), *on reconsideration*, 719 F. Supp.
    2d 1199 (E.D. Cal. 2010) ..........................................................................................................8

*McLean v. Garage Mgmt. Corp.*, 10 Civ. 3950, 2012 U.S. Dist. LEXIS 55425
    (S.D.N.Y. April 19, 2012) ........................................................................................................11

*Mitzner v. Sobol*, 136 F.R.D. 359, 362 (S.D.N.Y. 1991) ..............................................................12

*Red Vision Systems, Inc. v. National Real Estate Information Servs., L.P.*, 2015 Pa.
    Super. LEXIS 7 (Pa. Super. Jan. 13, 2015) ..............................................................................6

*Salomon Bros. Treasury Litig. V. Steinhardt Partners, L.P.*, 9 F.3d 230, 234 (2d Cir. 1993)......13

*Scott v. Chipotle Mexican Grill, Inc.*, 12-CV-08333, 2014 U.S. Dist. LEXIS 175775
(S.D.N.Y. 2014)..................................................................................................................12

*SEC v. Bank of Am. Corp.*, 09 Civ. 6829, 2009 U.S. Dist. LEXIS 82303
(S.D.N.Y. Aug. 25, 2009).............................................................................................. 11-12

*SEC v. Brenman, Raskin, Friedlob & Tenenbaum P.C.*, No. 92 C 7253 (N.D. Ill.
Nov. 13, 1992)........................................................................................................................6

*SEC v. Hermann*, 00 CV 5575, 2004 U.S. Dist. LEXIS 7829 (S.D.N.Y. May 5, 2004).........14, 16

*SEC v. NIR Group, LLC*, 283 F.R.D. 127, 131 (E.D.N.Y. 2012)....................................................13

*Shaub & Williams, LLP v. Augme Techs., Inc.*, 13 Civ. 1101, 2014 U.S. Dist. LEXIS
34438 (S.D.N.Y. March 17, 2014) ............................................................................... 11-12

*Silva v. Cofresi*, 13 Civ. 3200, 2014 U.S. Dist. LEXIS 105877 (S.D.N.Y. Aug. 1, 2014) .............9

*Software Rights Archive, LLC v. Google, Inc.*, 2010 U.S. Dist. LEXIS 11581
(N.D. Cal. Feb. 10, 2010) ....................................................................................................7

*TAS Distributing Co., Inc. v. Cummins Inc.*, No. 07-1141, 2009 U.S. Dist. LEXIS
93750 (C.D. Ill. Oct. 7, 2009)..............................................................................................7

*U.S. v. Jacobs*, 117 F.3d 82 (2d Cir. 1997) .......................................................................... 14-15

*United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 2008), *cert. den.*, 502 U.S. 813 (1991)..........13

*United States v. Gasparik*, 141 F. Supp.2d 361 (S.D.N.Y. 2001) ........................................... 16-17

*United States v. Ghavami*, 882 F. Supp.2d  532 (S.D.N.Y. 2012) ...............................................13

*United States v. Kerik*, 531 F. Supp.2d 610 (S.D.N.Y. 2008) .....................................................16

*United States v. Zolin*, 491 U.S. 554 (1989)................................................................................15

*Varughese v. Mount Sinai Med. Ctr.*, 12 Civ. 8812, 2014 U.S. Dist. LEXIS 12628
(S.D.N.Y. Jan. 31, 2014) ......................................................................................................4

*William A. Gross Construction Associates, Inc. v. American Manufacturers Mutual
Ins. Co.*, 262 F.R.D. 354 (S.D.N.Y. 2009) ............................................................................4

*Xueden Wang v. Hearst Corp.*, 12 CV 793, 2012 U.S. Dist. LEXIS 179609 (Dec. 19, 2012) .....12

## Secondary Sources

Restatement (Third) Of The Law Governing Lawyers § 73 cmmt. k. ...........................................8

Wright and Miller's Federal Practice and Procedure, Evidence § 5499. ......................................8

Testimonial Privileges § 1:74 (3d ed. 2014).................................................................................8

1 Attorney-Client Privilege in the U.S. § 2:5 (December 2014). ..................................................8

Corp Couns Gd to Atty-Client, Work-Product & Self-Eval Priv § 1:6...........................................8

The Securities and Exchange Commission ("SEC") through its attorneys, seeks an order pursuant to F.R.C.P. 37, (1) compelling the production of all documents previously withheld by Defendants Luis Carrillo ("Carrillo"), Wade Huettel ("Huettel"), and Carrillo Huettel LLP ("the firm") on the grounds that the attorney client privilege either does not exist or was waived; (2) compelling the testimony of Carrillo and Huettel on issues for which the privilege was asserted; and (3) ordering that Joel Franklin's ("Franklin") production of privileged documents to the SEC constituted a waiver of the privilege, which will allow the SEC to review those documents which were sequestered by the SEC pursuant to Rule 26(b)(5)(B) pending judicial review.

## PRELIMINARY STATEMENT

The SEC served discovery requests on Carillo and Huettel and the firm seeking documents concerning the fraud alleged in this case – fraud in which that they are alleged to have actively participated and facilitated. Defendants Pacific Blue Energy Corporation ("Pacific Blue") and Tradeshow Marketing Company Ltd. ("Tradeshow") – the clients of the firm – did not file a protective order seeking to prevent the disclosures on the grounds of privilege. Defendants Luniel de Beer ("de Beer") and Joel P. Franklin ("Franklin") – the former officers and directors of Pacific Blue and Tradeshow – did not file a protective order seeking to prevent the disclosures. Defendants Benjamin Kirk, and John Kirk – who are alleged to have secretly controlled Pacific Blue and Tradeshow – did not file a protective order. The only persons who have sought on privilege grounds to prevent Carrillo and Huettel and the firm from producing documents and testifying are the lawyers themselves.

Defunct corporations such as Pacific Blue, Tradeshow and Skymark Media Group Ltd. ("Skymark") cannot assert the attorney-client privilege. Moreover, to the extent that there was a privilege to assert, that privilege was waived by the failure of these companies and their officers

and directors to object to the requests served on the attorneys. Moreover, by making reliance on counsel an issue in this litigation, de Beer and Benjamin Kirk implicitly waived any privilege that they might have otherwise sought to assert. Franklin also explicitly waived the privilege by voluntarily producing attorney-client communications. Finally, to the extent that defunct corporations can assert a privilege and that privilege was not waived, the communications with Carrillo, Huettel, and the firm were not privileged because those communications were in furtherance of the fraud alleged in the Complaint.

## **PROCEDURAL HISTORY**

In December 2011 – in connection with its pre-complaint investigation – the SEC issued subpoenas to Carrillo and the firm. In 2012, the SEC issued additional subpoenas to Carrillo and the firm as well as to Huettel. The firm produced certain documents and withheld other documents on the grounds of privilege. The firm also produced a privilege log, which indicated that the firm had provided legal advice to Pacific Blue, Tradeshow, Skymark Research, Scottsdale Capital Advisors, and Gibraltar Global Securities, among others. (Declaration of Todd D. Brody dated February 24, 2015 ("Brody Decl.", Exhibit A).

On December 6, 2011, also in connection with its pre-complaint investigation, the SEC served a subpoena on Franklin. The cover letter from the SEC stated that the "subpoena requires production of certain communications between Mr. Franklin and Luis Carrillo and Carrillo Huettel LLP, and requests the same categories of documents set forth in the September 9, 2011 subpoena addressed to Pacific Blue Energy Corp." (Brody Decl., Exhibit B"). In response to this subpoena, Franklin produced a "thumb drive" containing all communications of which Franklin was aware with the Carrillo Huettel law firm. In the cover letter to the SEC, counsel wrote, "[w]hile the requested documents appear to contain certain attorney client

communications between Pacific Blue Energy Corporation and its outside counsel, and may be so designated by other parties, Mr. Franklin has determined to deliver them to the Commission as he does not have the financial ability to challenge the subpoena's broad scope, or defense any claim of privilege." (Brody Decl., Exhibit C). In response to the objection of counsel for Luniel de Beer, the SEC sequestered these documents.

On March 15, 2013, the SEC filed its Complaint in this matter. Following denials of the motions to dismiss,[1] the defendants in this case filed answers. Many of the defendants provided a substantive answer. Defendants Ben Kirk and James Hinton, however, answered the complaint by asserting their right against self-incrimination (although Ben Kirk asserted affirmative defenses, including good faith and reliance on the advice of counsel and other professionals).[2]

On April 14, 2014, the SEC served its first set of document requests on Carrillo and Huettel. Carrillo and Huettel both objected to the requests on various grounds, including the attorney client privilege and work product doctrine. Both also stated that they had produced all responsive non-privileged documents during the investigation. (Brody Decl. Exhibits D-E). While neither provided a privilege log, both apparently relied on the privilege log that the law firm had provided to the SEC during the investigation. On October 30, 2014, the SEC served a second request for the production of documents on both Carrillo and Huettel. On November 26, 2014, Carrillo and Huettel both responded to the SEC's second request and again objected on various grounds, including the attorney-client privilege and the work product doctrine.

On April 11, 2014, the SEC served its first request for the production of documents on de Beer. (Brody Decl., Ex. F). De Beer did not respond to the SEC's request. Instead, on October

---

[1] The motion to dismiss were all denied except with respect to Dr. Luis Carrillo (relief defendant), which was granted in full and with respect to Gibraltar/Davis, granted in part.
[2] Several of the defendants did not answer because they entered into settlements with the SEC, including Franklin, John Kirk and Dylan Boyle. The two corporations Pacific Blue and Tradeshow did not answer and are in default.

2, 2014, counsel for de Beer sent the SEC a letter stating "[o]n behalf of defendant Luniel de

Beer, I write to assert Mr. de Beer's privilege against self-incrimination under the Fifth

Amendment in response to plaintiff Securities and Exchange Commission's April 11, 2014

document request.[3] (Brody Decl. Exhibit G).

On February 3, 2015, the SEC issued notices of deposition to Carrillo and Huettel to take

place in San Diego, where Huettel presently lives and where Carrillo formerly lived. (Brody

Decl. Ex. H). On February 4, 2015, the SEC received a letter from counsel to Carrillo objecting

to the deposition. (Brody Decl., Ex. I). In this letter, counsel stated that the examination of

Carrillo "will implicate the privilege" and stated that it would be waste of time and resources to

hold the deposition until the privilege issue was addressed. In conversations with the SEC,

counsel for Huettel made the same point. In response to the letter, the SEC adjourned the

depositions to make the instant motion. (Brody Decl., Ex. J). The SEC conferred in good faith

with counsel for Carrillo, Huettel, de Beer, and Benjamin Kirk prior to making this motion.

## ARGUMENT

The party invoking the privilege bears the burden of "establish[ing] those facts that are

the essential elements of the privileged relationship, a burden not discharged by mere conclusory

or ipse dixit assertions." *Varughese v. Mount Sinai Med. Ctr.*, 12 Civ. 8812, 2014 U.S. Dist.

LEXIS 12628 *4-5 (S.D.N.Y. Jan. 31, 2014) (Francis, J.) (*citing In re Grand Jury Subpoena

Dated January 4, 1984*, 750 F.2d 223, 224-25 (2d Cir. 1984); *William A. Gross Construction

Associates, Inc. v. American Manufacturers Mutual Insurance Co.*, 262 F.R.D. 354, 360-61

(S.D.N.Y. 2009)). In this litigation, neither Pacific Blue nor Tradeshow has sought to prevent

Carrillo or Huettel or the firm from producing documents. Nor have either of its officers and

directors – de Beer or Franklin – done so. To the contrary, de Beer never even responded to

---

[3] de Beer's assertion of his Fifth Amendment privilege was curious given that he answered the Complaint.

document requests served on him, asserting his privilege against self-incrimination.  The only persons who are objecting to the production of the documents are Carrillo and Huettel.

## I.    DEFUNCT COMPANIES DO NOT HAVE A PRIVILEGE TO ASSERT

To the extent that any of the documents withheld on privilege grounds concerned legal advice provided to either Trademark, Pacific Blue, or Skymark, those companies have ceased to exist and, therefore, cannot assert the attorney-client privilege.

Pacific Blue. was a Nevada domestic corporation.  As reflected in a printout from the Nevada Secretary of State, Its business license expired on April 30, 2011 and its status as a domestic corporation was revoked.  (Brody Decl., Ex. K).  The last public filing made by Pacific Blue was on November 15, 2011 and that was a notification of its inability to timely file required quarterly financial statements.  While Pacific Blue was named as a defendant in this case (and was properly served by service on de Beer, its director), it never answered the Complaint, the clerk issued a notice of default, uncontested, and the SEC has moved for a default judgment against it.  Tradeshow was a Nevada domestic corporation.  As reflected in a printout from the Nevada Secretary of State, its business license expired on December 31, 2011 and its status as a domestic corporation has been revoked.  (Brody Decl., Ex. L).  Its last public filing with the SEC was on July 17, 2008.  While Tradeshow was named as a defendant in this case (and was properly served by service on de Beer, its director and sole officer), it has never answered the Complaint, the clerk issued a notice of default, uncontested, and the SEC has moved for a default judgment against it.[4]  Skymark was a Named Alberta Corporation.  In May 2012, Skymark was struck from the corporate registry for failure to file annual returns.  (Brody Decl. Ex. M).

---

[4] Because both Pacific Blue's and Tradeshow's corporate status have been revoked, neither is allowed to conduct business under Nevada law.  Nev. Rev. St. 87.175(5) ("On the first day of the first anniversary of the month following the month in which the filing was required, the charter of the corporation is revoked and its right to

Dissolved corporations and defunct corporations (which, while not technically dissolved are, for all practical purposes, dissolved) cannot assert the attorney-client privilege. Directly on point is the unpublished order in *SEC v. Brenman, Raskin, Friedlob & Tenenbaum P.C.*, No. 92 C 7253 (N.D. Ill. Nov. 13, 1992) (Ex. A hereto). In that case, the SEC made a motion to the district court to enforce a subpoena that had been issued to the law firm for documents relating to its representation of Calico, a corporation whose charter had been revoked by the State of Nevada. (Ex. B hereto). The law firm, citing Calico's attorney client privilege, refused to fully comply with the subpoena and withheld privileged documents. The court rejected this argument, stating "[t]here being no grounds for any assertion of the attorney client privilege, the law firm must fully comply with the SEC's subpoena requesting documents relating to the firm's representation of Calico." Similarly, where the charters of Pacific Blue and Tradeshow have been revoked by the State of Nevada and where the corporate status of Skymark has been revoked in Canada, this Court should find that the lawyers of the defunct corporations cannot withhold documents and testimony on the grounds of privilege.

While the Court in *Brenman* did not provide the basis for its decision, other courts that have addressed this issue also held that there can be no assertion of the privilege. Most recently, in *Red Vision Systems, Inc. v. National Real Estate Information Servs., L.P.*, 2015 Pa. Super. LEXIS 7 (Pa. Super. Jan. 13, 2015), the Pennsylvania Superior Court, held that a corporation that ceases normal business operations cannot assert the privilege if it does not have any remaining management or successor to handle the windup of business:

> We hold that the communications between a corporation or other business entity and its attorney remain subject to the attorney-client privilege after the company

---

transact business is forfeited."); Indeed, corporations under terminated status are subject to fine for attempting to conduct business. N.A.C. 78.400(2).

dissolves and/or ceases normal business operations so long as the company retains some form of continued existence evidenced by having someone with the authority to speak for the "client." That person may be a bankruptcy trustee as in *Weintraub*; a statutory liquidator as in *Maleski*; a successor-in-interest as in County of Santa Clara and City of Rialto; a person managing the corporation during the windup process as in Reilly; or some other person or group who succeeds to the defunct company's management as in *Melendrez*, 215 Cal.App.4th at 1356 (holding dissolved company which had gone through bankruptcy, no longer had officers or directors, and existed only as a shell to pay out insurance proceeds to asbestos claimants could assert attorney-client privilege through the company's insurers as its *de facto* assignee). However, if a business is dissolved and/or has ceased to operate, and has neither a legal successor nor some remaining management with authority to handle the company's post-dissolution windup, then there is no longer any "client" to raise or waive the privilege. Without such a client, it is impossible to satisfy the burden of one invoking the privilege to show that "[t]he privilege has been claimed and is not waived by the client." Fleming, 924 A.2d at 1264.

*See also In re Fundamental Long Term Care, Inc., Debtor*, 8:11-bk-22258, 2012 Bankr. LEXIS 4843 *27-32 (Bank. M.D. Fla. Oct. 9, 2012) (finding that dissolved or defunct corporations cannot assert the privilege because there is no one left to assert the privilege and because the rational for extending the privilege to corporations does not apply to dissolved corporations); *Software Rights Archive, LLC v. Google, Inc.*, 2010 U.S. Dist. LEXIS 11581 *4-5 (N.D. Cal. Feb. 10, 2010) (collecting cases); *TAS Distributing Co., Inc. v. Cummins Inc.*, No. 07-1141, 2009 U.S. Dist. LEXIS 93750 *4 (C.D. Ill. Oct. 7, 2009) (attorney-client privilege does not extend beyond the death of a corporation); *Lewis v. U.S.*, 02-2958, 2004 U.S. Dist. LEXIS 26680 *9-12, *order aff'd*, 2005 U.S. Dist. LEXIS 14508 (W.D. Tenn. June 20, 2005) (same); *Lopes v. Vieira*, 688 F. Supp. 2d 1050 (E.D. Cal. 2010), *on reconsideration*, 719 F. Supp. 2d 1199 (E.D. Cal. 2010) (former attorney of corporate entity, which although formally still active and in good standing with Secretary of State, but which had effectively ceased to function, did not have authority to assert entity's attorney-client privilege); *City of Rialto v. U.S. Dept. of Defense*, 492 F. Supp. 2d 1193, 1199–1201 (C.D. Cal. 2007) (privilege for a corporation ceases to exist after

the corporation's dissolution is complete); *Gilliland v. Geramita*, 2:05-cv-1059, 2006 U.S. Dist. LEXIS 65546 *7-9 (W.D. Pa. Sept. 14, 2006) ("No real purpose would be served by continuing the privilege after operations cease, as the corporation would no longer have any goodwill or reputation to maintain.").[5]  Here the best evidence that Pacific Blue and Tradeshow do not have any functioning management is their conduct in this litigation; both companies are in default and neither objected to the discovery request on their counsel.

## II.  EVEN IF THE PRIVILEGE STILL EXISTED, IT WAS WAIVED

Even assuming that the attorney-client privilege survives, notwithstanding that both Pacific Blue and Tradeshow are defunct, that privilege was waived by virtue of the fact that the persons who could potentially assert the privilege have waived that privilege.  To date, the only persons who objected to the discovery requests served on Carrillo, Huettel, and the law firm on the grounds of privilege were Carrillo and Huettel.  Neither Tradeshow nor Pacific Blue moved to quash or otherwise objected to the requests.  And neither de Beer nor Franklin (the former directors and officers of Tradeshow and Pacific Blue) objected to the requests.  Carrillo and Huettel, however, are not authorized under California law – where Carrillo and Huettel practiced – to assert the privilege.  Consequently, their assertion of the privilege does not cure the fact that the "client" did not assert the privilege.  Because there was no valid assertion of the privilege, it was waived.  In addition to the fact that the privilege was waived by the failure of the client to assert the privilege, the privilege was waived because:  (1) Franklin – the President, Secretary, Treasurer and a director of Pacific Blue – waived the privilege with respect to Pacific Blue

---

[5] *See also* Restatement (Third) Of The Law Governing Lawyers § 73 cmmt. k. ("[w]hen a corporation or other organization has ceased to have a legal existence such that no person can act in its behalf, ordinarily the attorney-client privilege terminates...."); Wright and Miller's Federal Practice and Procedure, Evidence § 5499; Testimonial Privileges § 1:74 (3d ed. 2014) ("For organizations, the general rule is that when the organization ceases to have legal existence such that no one can act in its behalf, the privilege terminates."); 1 Attorney-Client Privilege in the U.S. § 2:5 (December 2014); Corp Couns Gd to Atty-Client, Work-Product & Self-Eval Priv § 1:6.

documents by previously producing such documents to the SEC; and (2) de Beer waived the
privilege by advancing a good faith defense and reliance on counsel and by failing to assert any
privileges when served with document requests from the SEC.

A.     **Objections (Including Privilege Objections) are Waived if not Timely Asserted**

It is well-established that the failure to assert objections to discovery requests on a timely
basis constitutes a waiver of such objections, including an objection based on the attorney-client
privilege or work product doctrine. *See, e.g., Silva v. Cofresi*, 13 Civ. 3200, 2014 U.S. Dist.
LEXIS 105877 *17-18 (S.D.N.Y. Aug. 1, 2014) (Francis, J.); *Fleisher v. Phoenix Life. Ins. Co.*,
11 Civ. 8405, 2013 U.S. Dist. LEXIS 964 *8-9 (S.D.N.Y. Jan. 3, 2013) (Francis J.) (failure to
properly move to quash subpoena on a timely basis constitutes waiver). "'Any other result
would . . . completely frustrate the time limits contained in the Federal Rules and give a license
to litigants to ignore the time limits for discovery without any adverse consequences.'" *Cohalan
v. Genie Indus.*, 276 F.R.D. 161, 163 (S.D.N.Y. 2011) (Francis, J.) (citations omitted). In
*Cohalan*, this Court stated that "courts will only impose waivers for tardiness under three
conditions: (1) where there is no showing of good cause for the late response, (2) where a party
has not responded to discovery requests despite court intervention, or (3) where a party has failed
entirely to respond." *Id*. at 164. Here, both conditions 1 and 3 apply. Here, the companies and
their former officers and directors did not move for a protective order concerning the SEC's
document requests on Carrillo, Huettel and there is no showing of good cause why the
companies or their former officers and directors did not do so.

The SEC anticipates that one or more of the Defendants in this case will assert that the
lawyer defendants asserted the privilege on their behalf and, consequently, there was no waiver.
The lawyers, however, were not authorized under California law (where they are licensed to

9

practice) to assert the privilege.  Pursuant to California Code of Evidence 954(c), a lawyer

cannot claim privilege "if there is no holder of the privilege in existence."  And the term "holder

of the privilege" is defined for a corporation no longer in existence as "a successor, assign,

trustee in dissolution, or any similar representative ...."  Id. at 953(d).  Because neither Pacific

Blue nor Tradeshow nor Skymark have a successor, assign, trustee in dissolution or similar

representative, there is no holder of the privilege.  And because there is no holder of the

privilege, Carrillo and Huettel cannot assert the privilege.  Therefore, the assertion of the

privilege by Carrillo and Huettel was meaningless and the privilege was waived.

**B.**     **Waiver of the Privilege By Asserting a Reliance on Counsel Defense**

        In addition to the fact that Pacific Blue and Tradeshow waived the attorney client

privilege by not objecting to the document requests issued to Carrillo, Huettel, and the law firm

in this litigation, the privilege was implicitly waived by de Beer (a director of Pacific Blue and

the sole officer and director of Tradeshow) who repeatedly placed the issue of reliance on

counsel at issue in this litigation.  In his motion to dismiss, de Beer claims that he "was entitled

to rely on counsel when it came to securities law issues."  (Docket #26 at p.2).  de Beer further

argues that "[i]n its capacity as corporate counsel, Carrillo Huettel crafted the transactions;

drafted the public filings and corporate documents and opined that they complied with federal

securities laws.  As a non-lawyer, de Beer was entitled to rely on corporate counsel's opinions on

matters of securities law, particularly complex ones."  (Id. at p. 5).  De Beer's reply brief is even

more explicit, stating that "the Complaint established the elements of good faith based upon

advice of counsel" and that "[s]igning documents drafted or blessed by counsel cannot amount to

an extreme departure from accepted standards."  (Docket #120 at p. 3).  In his answer to the

Complaint, de Beer also asserted the affirmative defense that he "acted at all times in good faith

and without reckless disregard for, knowledge or, or intent to engage in any supposed wrongdoing.") (Docket #174 at p. 27).

Ben Kirk (who is alleged in the SEC's complaint to have asserted control over Tradeshow and Pacific Blue even though he did not have an executive position at either company) also put the issue of his reliance on counsel at issue in this litigation.  In his answer, Kirk's Tenth Affirmative Defense is that "Plaintiff's claims are barred as the Defendant reasonably relied upon the advice of legal counsel and other professionals with respect to the transactions that are the subject of the Amended Complaint."  Kirk's Ninth Affirmative Defendant is that he "acted in good faith …."  (Docket #175 at p. 15).

By claiming reliance on counsel and good faith, de Beer and Kirk have waived the attorney client privilege because the adequacy of such defense cannot be tested without allowing the SEC to review their communications with counsel.  In *Shaub & Williams, LLP v. Augme Techs., Inc.,* 13 Civ. 1101, 2014 U.S. Dist. LEXIS 34438 *8-9 (S.D.N.Y. March 17, 2014) (Francis, J.), this Court stated that "[a]ssertion of an advice of counsel defense is the 'quintessential example' of an implied waiver."  *See also In re County of Erie,* 546 F.3d 222, 228 (2d Cir. 2008); *United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir. 2008), *cert. den.*, 502 U.S. 813 (1991); *Kadden v. Visualex,* LLC, 11 Civ. 4892, 2012 U.S. Dist. LEXIS 103791 *7 (S.D.N.Y. July 25, 2012) ("Kadden is correct that in general 'absent a waiver of the privilege, [a defendant] cannot sustain a defense based on good faith reliance on the advice of counsel.'"); *McLean v. Garage Mgmt. Corp.*, 10 Civ. 3950, 2012 U.S. Dist. LEXIS 55425 *16 (S.D.N.Y. April 19, 2012) ("absent a waiver of the privilege, GMC cannot sustain a defense based on good faith reliance on the advice of counsel"); *SEC v. Bank of Am. Corp.*, 09 Civ. 6829, 2009 U.S. Dist. LEXIS 82303 *4 (S.D.N.Y. Aug. 25, 2009) ("If the responsible officers of the Bank of

11

America, in sworn testimony to the SEC, all stated that 'they relied entirely on counsel,' this would seem to be either a flat waiver of privilege or, if privilege is maintained, then entitled to no weight whatever, since the statement cannot be tested."); *Gruss v. Zwirn*, 276 F.R.D. 115, 134-135 (S.D.N.Y. 2011) (affirmative defense in answer waives privilege), *rev'd, in part, on other grounds*, 09 civ. 6441, 2013 U.S. Dist. LEXIS 100012 (S.D.N.Y. July 10, 2013); *Mitzner v. Sobol*, 136 F.R.D. 359, 362 (S.D.N.Y. 1991) (affirmative defense in answer constitutes a waiver). A defendant who asserts a good faith defense also waives the privilege. *See, e.g., Erie*, 546 F.2d at 228-29; *Scott v. Chipotle Mexican Grill, Inc.*, 12-CV-08333, 2014 U.S. Dist. LEXIS 175775 *245 (S.D.N.Y. 2014) ("Where the defendant has clearly benefited from the advice of counsel on the very issue on which it asserts good faith, it puts its relevant attorney-client communications at issue and thereby waives its privilege"); *Shaub &Williams, LLP v. Augme Techs.*, 13 Civ. 1101, 2014 U.S. Dist. LEXIS 34438 *8 (S.D.N.Y. 2014) ("a defendant asserting a good faith defense that implicates its state of mind may also waive the privilege") (Francis, J.); *Xueden Wang v. Hearst Corp.*, 12 CV 793, 2012 U.S. Dist. LEXIS 179609 *4-9 (Dec. 19, 2012) (waiver even where counsel argued that good faith defense would not rely on legal advice).

## C.   Franklin Waived the Privilege for Pacific Blue

In addition to the implicit waiver by de Beer and Ben Kirk, there was an actual waiver by Franklin who voluntarily produced privileged communications between Pacific Blue and the firm. In response to a December 6, 2011 subpoena, Franklin produced a "thumb drive" containing all communications of which Franklin was aware with the Carrillo Huettel law firm. In the cover letter to the SEC, counsel wrote, "[w]hile the requested documents appear to contain certain attorney client communications between Pacific Blue Energy Corporation and its outside counsel, and may be so designated by other parties, Mr. Franklin has determined to deliver them

12

to the Commission as he does not have the financial ability to challenge the subpoena's broad scope, or defense any claim of privilege."[6]

Franklin's voluntary production of the purported privileged documents to the SEC was a waiver of the privilege. *See, e.g, Salomon Bros. Treasury Litig. V. Steinhardt Partners, L.P.*, 9 F.3d 230, 234 (2d Cir. 1993) ("Once a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears."); *SEC v. NIR Group, LLC*, 283 F.R.D. 127, 131 (E.D.N.Y. 2012) ("Voluntary disclosure of confidential, privileged material to a third party generally waives an applicable privilege"). As the President, Secretary, and Treasurer (indeed the only officer) of Pacific Blue as well as a Director, Franklin was implicitly authorized to waive Pacific Blue's attorney-client privilege. *See, e.g., United States v. Ghavami*, 882 F. Supp.2d  532, 538 (S.D.N.Y. 2012) (Francis, J.); *Hollis v. O'Driscoll*, 13 civ. 01955, 2013 U.S. Dist. LEXIS 83885 *13 (S.D.N.Y. June 11, 2013) ("if the attorney-client privilege belongs to an entity, only certain high-ranking officers and directors of the entity are authorized to waive the privilege"). Based on Franklin's production of privilege documents, there has been a waiver and this Court should issue an order allowing the SEC to review the documents produced by Franklin and sequestered and should also order Carrillo and Huettel to produce all documents relating to Pacific Blue and to testify about Pacific Blue.

## III.    THE CRIME FRAUD EXCEPTION APPLIES[7]

In addition to the fact that defunct corporations cannot assert the privilege and that even if they could assert such a privilege, the privilege was waived, there is no applicable privilege

---

[6] In response to communications from de Beer's counsel, the SEC sequestered the documents produced by Franklin pursuant to F.R.C.P. 26(b)(5)(B).

[7] While the SEC raises the crime fraud exception last in its brief, this is not to suggest that the SEC believes that this is the weakest of its arguments. Rather, it reflects the fact that it appears that the general procedure in crime fraud exception cases is for the Court to conduct an *in camera* review of the withheld documents once a *prima facie* case has been made. Because this would be a time-consuming process for the Court and because the SEC's other arguments would not require an *in camera* review, the SEC believes that the crime fraud exception only needs to be addressed if the Court finds that the SEC's other grounds for disclosure are insufficient.

here because of the crime fraud exception, which applies to civil fraud (and not just criminal fraud). *SEC v. Hermann*, 00 CV 5575, 2004 U.S. Dist. LEXIS 7829 *6 (S.D.N.Y. May 5, 2004) (granting motion to compel documents and testimony and stating that "[t]here is no question that the crime-fraud exception embraces securities fraud and common-law fraud").

In the Second Circuit, "[t]he crime-fraud exception removes the privilege from those attorney-client communications that are related[d] to client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct. It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the seal of secrecy between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." *See U.S. v. Jacobs*, 117 F.3d 82, 87 89 (2d Cir. 1997) (compelling production of communications with attorney where attorney's services were sought to perpetuate ongoing fraudulent scheme). Thus, for example, in *Catton v. Defense Tech. Sys.*, 05 Civ. 6954, 2007 U.S. Dist. LEXIS 84454 (S.D.N.Y. Nov. 15, 2007), the Court held that attorney client communications concerning opinion letters that were fraudulently used to remove the restrictive legend from stocks were not privileged. Importantly, "[i]t is not necessary that the person communicating with the client [i.e. the lawyer] have knowledge that she is being used to carry out a crime or fraud." *In re Grand Jury Subpoena Dated March 20, 2013*, 13-Mc-189, 2014 U.S. Dist. LEXIS 91901 *28 (S.D.N.Y. June 24, 2014); *see also Chevron Corp. v. Donziger*, 11 Civ. 0691, 2013 U.S. Dist. LEXIS 36353 *9-10 (S.D.N.Y. March 15, 2013) ("If probable cause exists as to the commission of a fraud or crime, it is not necessary to show also that a lawyer from whom otherwise privileged or protected documents may be sought was a culpable or knowing participant in the fraud or crime. It therefore is unnecessary to determine

14

for present purposes whether there is probable cause to suspect that PB or any of its personnel
was a culpable or knowing participant in any alleged fraud or crime").

   The SEC thus must show "that there is a factual basis for a showing of probable cause to
believe that a fraud or crime has been committed and that the communications were in
furtherance of the fraud or crime. *Jacobs*, 117 F.3d at 87. "Probable cause" in the context of the
crime fraud exception requires that a "prudent person" have a "reasonable basis" for believing
that the objective of the client's communication with the attorney was to further a fraudulent
scheme. *In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1039
(2d Cir. 1984). Or, as one court has put it, the party seeking to pierce the privilege should
demonstrate a "substantial reason" to believe that the party seeking to preserve the privilege
"engaged in or attempted to commit a fraud and used communications with its attorney to do so."
*In re Omnicom Group., Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 60298 (S.D.N.Y. Aug. 10, 2007).
"A lesser evidentiary showing is needed to trigger an *in camera* review than is required
ultimately to overcome the privilege." *United States v. Zolin*, 491 U.S. 554, 572 (1989). In
order to review evidence *in camera*, there need only be "a showing of a factual basis adequate to
support a good faith belief by a reasonable person ... that *in camera* review of the materials may
reveal evidence to establish the claim that the crime-fraud exception applies." *Id.*

   In *Freedman v. Weatherford Int'l Inc.*, 12 Civ. 2121, 2014 U.S. Dist. LEXIS 102248 *18-
19 (S.D.N.Y. July 25), *recon. den.*, 2014 U.S. Dist. LEXIS 133950 (Sept. 12, 2014) (Francis, J.),
this Court held that where the fraud alleged in the complaint is the same fraud claimed with
respect to the challenged privileged communications, and the court had already denied a motion
to dismiss (finding that the complaint met the heightened pleading standards of Rule 9(b)), the
party had met its prima facie burden to demonstrate that a fraud was committed. The same

situation exists here, where Judge Daniels has already held that the fraudulent conduct alleged in the complaint (which is the same fraudulent conduct that predicates the crime fraud exception motion) survived motions to dismiss.[8]  Further evidence supporting the commission of fraud is the fact that many of the defendants in this case, including Ben Kirk, de Beer, and Hinton have either refused to answer the complaint or have refused to provide discovery, asserting their Fifth Amendment privilege to avoid self-incrimination.  An adverse inference is justified to find that the crime fraud exception applies here. *Amusement Indus., Inc. v. Stern*, 293 F.R.D. 420, 428 (S.D.N.Y. 2013) ("Courts have drawn such an inference when determining if the crime-fraud exception applies to evidence protected by the attorney-client privilege or work product doctrine") (and cases cited therein), *Herman*, 2004 U.S. Dist. LEXIS 7829 at *20 (negative inferences can be drawn from the invocation of the fifth amendment privilege).  Further demonstrating that a fraud took place is the fact that several of the defendants have entered into settlements, consenting to fraud injunctions.[9]  In addition, Pacific Blue and Tradeshow have defaulted, and have never answered or contested the allegations in the Complaint, further demonstrating that a fraud was committed.[10]

Likewise, the SEC has met its prima facie burden to establish that the communications at issue facilitated the fraud.  Indeed, no one denies that Carrillo and Huettel were engaged by Tradeshow and Pacific Blue to structure the transactions at issue, to draft the SEC filings, to provide the opinion letters, and to do the other actions that the District Court in this case has

---

[8] *See also United States v. Kerik*, 531 F. Supp.2d 610, 617-18 (S.D.N.Y. 2008) (indictment sufficient to demonstrate probably cause); *United States v. Gasparik*, 141 F. Supp.2d 361, 372 (S.D.N.Y. 2001) (Probable cause to believe that the fraud occurred has already been found by reason of the indictment).
[9] In their signed consents, John Kirk and Boyle both acknowledged that in connection with any motion regarding the application of their crime fraud exception, they would be precluded from arguing that they did not violate the federal securities laws as alleged in the complaint.  (Docket # 88, 92).
[10] Should the Court believe that this does not provide sufficient probably cause, the SEC would certainly submit a declaration providing documents which would establish probably cause.

already found was properly alleged to have been part of the fraudulent scheme.[11]  *See Gasparik*, 141 F. Supp.2d at 372 ("The legal work described in paragraph 7 of the proffer falls within the 'crime fraud' exception because it goes to the heart of the alleged fraud.  The preparation of a registration statement was a necessary step in permitting the fraudulent stock purchase scheme to advance.").  Accordingly, the crime-fraud exception should apply to all communications with Carrillo, Huettel and the firm concerning any acts in furtherance of the scheme, including:  (1) the purchase of the shares of Descanso Agency, Inc. and the renaming of the company to Pacific Blue; (2) the distribution of Pacific Blue shares in 4.9% blocks to John Kirk, Dr. Luis Carrillo and the various foreign nominees; (3)  the "non-Affiliate Stock Purchase Agreement"; (4) the "Affiliate Stock Purchase Agreement;" (5) the "non affiliate" stock purchase agreements for John Kirk, (6) the comments on Pacific Blue promotional documents; (7) the drafting and review of Pacific Blue's and Tradeshow's SEC filings; (8) the "related party" worksheet to be relied upon by Pacific Blue's auditors; (9) the opinion letters to Scottsdale and to the Depository Trust Company (DTC) to facilitate the deposit and sale of the Pacific Blue shares by the Kirks and Boyle; (10) advice concerning the Skymark script and other written materials distributed by Skymark; (11) the trademarking of Skymark; (12) the transfer of funds relating to the purchase or sale of Trademark or Pacific Blue shares through the firm's attorney trust account; (13) the

---

[11] In his Answer to the Complaint (Docket # 174), de Beer admits that the law firm represented Pacific Blue and Tradeshow (¶15), that Carrillo drafted the non-affiliate stock purchase agreements (¶86), that de Beer's and Franklin's bonuses in December 2010 were approved by Carrillo (¶88), and that Carrillo and Huettel drafted all of Pacific Blue's SEC filings.  In his answer to the Complaint (Docket # 169), Huettel admits that the firm represented Pacific Blue, Tradeshow, Gibraltar, Skymark and John Kirk (¶15), admits that he was involved in discussions with others about the Street Sweeper article (¶71), admits that he was asked to and helped review documents relating to Pacific Blue (¶90), admits that he was asked to and helped to draft and/or review Pacific Blue's SEC filings (¶¶98-99), and admits that Carrillo Huettel provided various opinion letters to Scottsdale and to the Depository Trust Company relating to Pacific Blue (¶¶134-136).  In his Answer to the Complaint (docket # 172), Carrillo admits that the firm represented Pacific Blue, Tradeshow, Gibraltar, Skymark and John Kirk (¶15), admits that he was involved with others about the Street Sweeper article (¶71), admits that as part of the firm's engagement by Pacific Blue he was asked to and helped review documents relating to Pacific Blue (¶90), admits that he helped draft Pacific Blue's SEC filings (¶¶98-99), and admits that the firm provided opinion letters to Scottsdale and the Depository Trust Company relating to Pacific Blue (¶¶134-136).

use of any offshore nominee entities by Ben Kirk, John Kirk, Hinton or Boyle, (14) private

placement investments in Pacific Blue and Tradeshow, and (15) drafting and approval of the

public statements by Skymark and Tradeshow responding to an article on TheStreetSweeper.org

website.

## CONCLUSION

For the reasons set forth herein, the SEC respectfully requests that this Court issue an

order pursuant to F.R.C.P. 37 (1) compelling the production of all documents previously

withheld from production by Carrillo, Huettel ("Huettel"), and the firm; (2) compelling the

testimony of Carrillo and Huettel on issues for which the privilege was asserted; and (3) ordering

that Franklin's production of privileged documents to the SEC constituted a waiver of the

privilege, and to allow the SEC to review the documents which were previously sequestered.

Dated: February 24, 2015                    Respectfully Submitted,


                                            _____/s/ Todd D. Brody_____
                                            Todd D. Brody
                                            Senior Trial Counsel
                                            SECURITIES AND EXCHANGE COMMISSION
                                            New York Regional Office
                                            Brookfield Plaza
                                            200 Vesey Street
                                            New York, NY 10281
                                            Katherine S. Bromberg
                                            Joshua M. Newville