FILED-ED4   UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
92 NOV -2 AM 11:58   EASTERN DIVISION

CLERK
U.S. DISTRICT COURT

SECURITIES AND EXCHANGE COMMISSION,       CIVIL ACTION
                                          FILE NO. 92C 725
            Applicant,
                                          MEMORANDUM OF LAW IN
       v.                                 SUPPORT OF APPLICATION
                                          AND MOTION FOR AN ORDER
BRENMAN, RASKIN, FRIEDLOB &               TO REQUIRE COMPLIANCE
   TENENBAUM, P.C.,                       WITH SUBPOENA DUCES
                                          TECUM OF THE SECURITIES
            Respondent.                   AND EXCHANGE COMMISSION

JUDGE PLUNKETT

I.

**PRELIMINARY STATEMENT**

This matter is before the Court on the Application and Motion of the Securities and Exchange Commission (Commission) for an Order requiring Respondent Brenman, Raskin, Friedlob & Tenenbaum, P.C. (Brenman Raskin) to fully comply with an administrative Subpoena Duces Tecum (Subpoena) duly served upon it. The Subpoena was issued pursuant to the Commission's formal investigation into the activities of Certain Issuers of Blind Pool Securities. The Commission's investigation into this matter included an investigation into the activities of Calico Corporation (Calico), a blind pool issuer which employed respondent Brenman Raskin.

The Commission has made no prior application to any court for similar relief in this matter. It now seeks the aid of this Court only after all attempts to obtain voluntary compliance have failed. A summary proceeding such as this is necessary so that



the Commission may complete its investigation expeditiously. As this Memorandum and the supporting Affidavit demonstrate, the Commission has met all of the requirements for judicial enforcement of its Subpoena and is entitled to relief.

## II.

### JURISDICTION AND VENUE

Jurisdiction is conferred upon this Court by Section 21(c) of the Securities Exchange Act of 1934 (Exchange Act), as amended, 15 U.S.C. §78u(c). That Section provides that the Commission may invoke the aid of any court of the United States, within the jurisdiction of which the Commission is conducting an investigation, to require testimony and the production of documents. Section 21(c) further allows the Commission to seek the Court's assistance when an individual refuses to obey the Commission's subpoena. Under Section 21(c), venue is also proper for such a subpoena enforcement action within the jurisdiction in which the investigation is being conducted.

In this case, Respondent Brenman Raskin has refused to fully comply with the Subpoena duly issued to it by the Commission. The Subpoena was issued by the staff of the Commission pursuant to a Commission authorized investigation that is being conducted in Chicago by the Chicago Regional Office (CRO) of the Commission. The Subpoena was issued from the CRO. Accordingly, both jurisdiction and venue is proper in the Northern District of Illinois in that the investigation is being carried on in the Northern District of Illinois.

III.

**STATEMENT OF FACTS**

In 1987, the Commission received information that certain blind pool companies which had issued securities 1/ were engaging in manipulative practices. Subsequent inquiry disclosed that certain issuers of blind pool securities, including Calico, and certain individuals, may have made false and misleading statements concerning, among other things, the management of the issuers, control of the issuers, and the manipulation of the markets for the issuers' securities. Brenman Raskin and certain of its individual attorneys provided services to Calico in connection with Calico's issuance of securities or Calico's preparation of reports required to be filed with the Commission.

On July 10, 1987, the Commission, pursuant to Section 20(a) of the Securities Act of 1933 (Securities Act), as amended, 15 U.S.C. §77t(a), and Section 21(a) of the Exchange Act, as amended, 15 U.S.C. §78u(a), issued an Order Directing Private Investigation and Designating Officers to Take Testimony (Order) which is captioned <u>In the Matter of Certain Issuers</u>. (Affidavit of John R. Brissman at ¶ 2 and Exhibit 1 attached thereto) [hereinafter Brissman Aff. at ¶ _, Exhibit _ ]. The Order directed that an investigation be conducted to determine, among other things, whether certain listed blind pool issuers and

---

1/ In the case of an offering by a blind pool company, proceeds raised during a public offering are used to investigate, evaluate and acquire business opportunities. The offering prospectus does not specify any particular type of business.

4

others had violated various provisions of the federal securities laws. Pursuant to the Order, on March 26, 1992, the Commission issued the Subpoena to Brenman Raskin calling for the appearance of Brenman, Raskin, Friedlob & Tenenbaum, P.C., c/o Jeffrey M. Brenman, in Suite 1400, 500 West Madison Street, Chicago, Illinois at 10:00 a.m. on April 10, 1992 to produce documents. (Brissman Aff. at ¶ 4, Exhibit 3). The Subpoena was accompanied by a cover letter to Jeffrey M. Brenman of Brenman Raskin from Mark R. Borrelli (Borrelli) 2/ of the Commission, dated March 26, 1992 (Cover Letter), and a rider specifying certain documents to be produced (Rider). (Brissman Aff. at ¶ 4, Exhibit 3). The Cover Letter postponed the time for personal appearance provided that the documents were produced at the CRO on or before April 10, 1992. (Brissman Aff. at ¶ 5, Exhibit 4). The Subpoena, Rider, and Cover Letter were served by certified mail, return receipt requested. On March 30, 1992, the return receipt was signed by an agent of Brenman Raskin and returned to the Commission's staff. (Brissman Aff. at ¶ 6, Exhibit 5).

By letter to Borrelli, dated April 8, 1992, Brenman Raskin asserted Calico's attorney-client privilege and refused to fully

---

2/ On March 18, 1992, the Commission's Order was amended to designate Borrelli, and on October 15, 1992 the Commission's Order was amended to designate Michael J. Riordan, as officers of the Commission, empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence and require the production of any documents and records deemed relevant or material to the investigation and to perform all other duties in connection therewith as prescribed by law (Brissman Aff. at ¶ 3, Exhibit 2).

comply with the Subpoena. (Brissman Aff. at ¶ 7, Exhibit 6). In that letter, Mr. Brenman referred to previous correspondence relating to earlier, similar subpoenas issued by the staff of the Commission to Brenman Raskin, in which Brenman Raskin withheld certain documents, asserting Calico's attorney-client privilege. (Brissman Aff. at ¶ 7, Exhibit 6). 3/ Mr. Brenman stated that Brenman Raskin would continue to assert Calico's attorney-client privilege and, therefore, would not fully comply with the Subpoena, until Brenman Raskin felt it was appropriate to do so. (Brissman Aff. at ¶ 7, Exhibit 6). Mr. Brenman based this position on his previously asserted view that, although Nevada had revoked Calico's corporate charter, Calico's attorney-client privilege continued to exist because that charter could be reinstated. 4/ (See the January 13, 1992 letter from Mr. Brenman to Borrelli enclosed with, and attached to, the April 8, 1992 letter from Mr. Brenman to Borrelli. (Brissman Aff. at ¶ 7, Exhibit 6)). Brenman Raskin had previously produced certain

---

3/ The Commission issued subpoenas to Brenman Raskin requesting the production of certain documents relating to its representation of Calico on April 11, 1989, December 4, 1991, and March 26, 1992. Brenman Raskin partially complied and produced some documents in response to the April 11, 1989 subpoena and withheld other documents pursuant to assertion of Calico's attorney-client privilege. With respect to those same withheld documents, Brenman Raskin again asserted Calico's attorney-client privilege in response to the December 4, 1991 subpoena and the March 26, 1992 subpoena. Brenman Raskin's failure to fully comply with the March 26, 1992 subpoena is the basis of this action. (Brissman Aff. at ¶ 7, Exhibit 6).

4/ While Mr. Brenman did not cite any authority for his position, he appears to have been relying on Nev. Rev. Stat. §§ 78.180(1)-(3).

other documents which it did not deem to be privileged. (See Exhibits A & B of the January 13, 1992 letter from Mr. Brenman to Borrelli enclosed with, and attached to, the April 8, 1992 letter from Mr. Brenman to Borrelli. (Brissman Aff. at ¶ 7, Exhibit 6)).

Calico's corporate charter was permanently revoked by the State of Nevada on August 1, 1992, and Calico is no longer functioning in any capacity. (Brissman Aff. at ¶ 8, Exhibit 7). Subsequent to the August 1, 1992 permanent revocation of Calico's corporate charter by the State of Nevada, Michael J. Riordan (Riordan) of the Commission's staff wrote to Mr. Brenman, informing Brenman Raskin of that permanent revocation, and again requesting compliance with the Subpoena. (Brissman Aff. at ¶ 9, Exhibit 8). By letter to Riordan, dated October 19, 1992, Brenman Raskin, citing Calico's attorney-client privilege, continued its refusal to fully comply with the Subpoena. (Brissman Aff. at ¶ 10, Exhibit 9). As of this date, Brenman Raskin continues to fail to fully comply with the Subpoena.

## IV.

### ARGUMENT

A. **The Attorney-Client Privilege Does Not Protect From Disclosure Documents Requested by the Subpoena Duces Tecum of the Commission**

1. **Definition of the Attorney-Client Privilege**

In Radiant Burners, Inc. v. American Gas Association, 320 F.2d 314, 319 (7th Cir.), cert. denied, 375 U.S. 929 (1963) (quoting 8 Wigmore, Evidence § 2292 (McNaughton rev. 1961)), the

Seventh Circuit adopted Wigmore's formulation of the attorney-client privilege which provides that:

> (1) Where legal advice of any kind is sought, (2) from a professional legal adviser in his capacity as such, (3) the communication relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

The attorney-client privilege is available to corporations. Radiant Burners, Inc., 320 F.2d at 323. However, because the privilege impedes full and free discovery, "[t]he scope of the privilege should be 'strictly confined within the narrowest possible limits.'" Lawless, 709 F.2d at 487 (quoting 8 Wigmore, Evidence, § 2291 (McNaughton rev. 1961)).

### 2. Brenman Raskin Bears the Burden of Proof

The burden of proving that the attorney-privilege applies, by establishing all of its elements, rests with the party asserting the privilege. United States v. Lawless, 709 F.2d 485, 487 (7th Cir. 1983) (citing United States v. First State Bank, 691 F.2d 332, 335 (7th Cir. 1982). In this case, that burden of proof rests on Brenman Raskin, which has thus far failed to demonstrate that Calico is entitled to assert the attorney-client privilege.

### 3. A Corporation's Attorney-Client Privilege Terminates Upon the Corporation's Dissolution

The attorney-client privilege belongs to the client, not the attorney. In re Fischel, 557 F.2d 209, 211 (9th Cir. 1977). Where an attorney renders legal advice to the officers or

employees of a corporation in their capacity as corporate representatives, the attorney-client privilege belongs to the corporation. U.S. v. Plache, 913 F.2d 1375, 1381 (9th Cir. 1990). Any privilege which is held by a corporation may not be asserted by a former director, officer, or employee. CFTC v. Weintraub, 471 U.S. 343, 349 (1986). Because a corporation is a creature of statute and exists only under the law of the state by which it is created, its dissolution puts an end to its existence, Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp., 302 U.S. 120, 125 (1932), and all rights of a corporation expire upon its dissolution. Oklahoma Natural Gas Co. v. Oklahoma, 273 U.S. 257 (1927). Any prolonging of a corporation's life, even for litigation purposes, requires statutory authority. Chicago Title & Trust Co., 302 U.S. at 125.

Thus, while the attorney-client privilege may continue after the death of a person, where the client is a corporation the privilege terminates upon the corporation's dissolution. 8 Wigmore, Evidence § 2324 n.2 (McNaughton rev. 1961); see also Model Code of Evidence 209(c)(ii) (1942) (where, for purposes of the attorney-client privilege, the term "client" has been defined to include a corporation, until the corporation's existence as such is terminated).

### 4. Calico No Longer Exists, Therefore Brenman-Raskin Cannot Properly Assert Its Attorney-Client Privilege

Calico no longer exists in any capacity. Its corporate charter was permanently revoked by the State of Nevada on August

9

1, 1992. At that time, Calico's attorney-client privilege terminated, and Brenman Raskin may no longer assert that privilege. In addition, there is no Nevada statute which allows Calico, or its attorneys, to assert the attorney-client privilege subsequent to the permanent revocation of Calico's charter. Under these circumstances, and because the attorney-client privilege should be construed strictly, that privilege should not be available to Brenman Raskin, since Calico is no longer recognized as a legal entity. Therefore, Brenman Raskin cannot withhold documents called for by the Commission's Subpoena on the basis of an assertion of Calico's extinguished attorney-client privilege.

### 5. Policy Dictates Against Allowing the Assertion of the Attorney-Client Privilege

Allowing Brenman Raskin to refuse to fully comply with the Subpoena when Calico has ceased to exist would not further the policy underlying the attorney-client privilege. The purpose of the privilege is to "encourage clients to make full disclosure to their attorneys." Fisher v. United States, 425 U.S. 391, 403 (1976); see also In re Fischel, 557 F.2d 209, 211 (9th Cir. 1977). This policy justification might present a source of concern in this case if there were an existing client [5]/ who would be harmed by production of the documents at issue. Even

---

[5]/ A corporation's attorney-client privilege does not belong to any of its former officers or employees. CFTC v. Weintraub, 471 U.S. 343, 349 (1986).

the estate of a dead client has an interest in protecting the deceased's communications to avoid litigation and liability. But, a defunct corporation whose charter has been permanently revoked no longer has any interest to protect. In this case, Calico has completely ceased to exist. Therefore, Brenman Raskin's withholding of the documents serves no purpose, and Brenman Raskin should not be able to assert the privilege to prevent the disclosure of communications between Calico and Brenman Raskin.

### B. The Commission Has Met All Requirements For Judicial Enforcement Of Its Subpoena

Congress has assigned to the Commission the responsibility of protecting investors and preventing fraud in the capital markets. To aid it in accomplishing these goals, Section 20(a) of the Securities Act provides that:

> [w]henever it shall appear to the Commission, either upon complaint or otherwise, that the provisions of this title or of any rule or regulation prescribed under the authority thereof, have been or are about to be violated, it may, in its discretion . . . investigate such facts.

15 U.S.C. § 77t(a). Section 21(a)(1) of the Exchange Act similarly authorizes the Commission to conduct investigations to determine whether there have been violations of that Act. 15 U.S.C. § 78u(a)(1). In addition, under Section 21(b) of the Exchange Act, the Commission is authorized, in conducting its investigations, to subpoena witnesses and "require the production of any books, papers, correspondence, memoranda, or other records which the Commission deems relevant or material to the inquiry."

15 U.S.C. §78u(b). If an individual refuses to obey a subpoena, the Commission may seek an order from a court of competent jurisdiction, compelling compliance with the subpoena. 15 U.S.C. §78u(c).

Before obtaining judicial enforcement of its subpoena, the Commission must establish that its investigation lies within its authority and that the information sought is clearly defined and reasonably relevant to its inquiry. United States v. Morton Salt Co., 338 U.S. 632, 652 (1950); Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 208 (1946); SEC v. Arthur Young & Co., 584 F.2d 1018 (D.C. Cir. 1978); E.E.O.C. v. Temple Steel Co., 814 F.2d 482, 485 (7th Cir. 1987). In addition, the Commission must have followed the administrative prerequisites to the issuance of the Subpoena. United States v. Morton Salt Co., 338 U.S. 632, 652 (1950). 6/ Finally, the Subpoena must not be vague and the burden of compliance must not be unreasonable. Id.

   1.   **The Investigation Is Within The Commission's Authority**

As noted above, both the Securities Act and the Exchange Act authorize the Commission to investigate possible violations of

---

6/ A slightly different set of guidelines was established by the Court in United States v. Powell, 379 U.S. 48 (1964), which involved the construction of a provision of the Internal Revenue Code. The Powell guidelines contain one additional requirement: that the agency demonstrate that it does not possess the information requested. Id. at 58. While the Commission asserts that it is not subject to this additional guideline, it notes that the documents sought are not available from any other source because Calico Corporation no longer exists. Moreover, many of the documents sought are Brenman Raskin's internal files, which are only available from Brenman Raskin itself.

these Acts. The necessity of such investigation is left to the discretion of the Commission. See Section 20(a) of the Securities Act, 15 U.S.C. §77t(a) and Section 21(a) of the Exchange Act, 15 U.S.C. §78u(a).

The instant investigation is being conducted pursuant to the Commission's statutory authority, cited above. The Order Directing Private Investigation and Designating Officers to Take Testimony (Order) (Brissman Aff. at ¶ 2, Exhibit 1) states that the purpose of the investigation is to determine, among other things, whether certain blind pool issuers and others have violated various provisions of the federal securities laws. Thus, the objective of the investigation is squarely within the investigatory authority of the Commission.

### 2. The Subpoenaed Documents Are Reasonably Relevant to the Investigation

The Order outlines conduct involving several blind pool issuers. The Order states that the issuers named therein and others may have made use of the mails or interstate commerce while directly or indirectly employing devices, schemes or artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or engaged in acts, practices or courses of business which would or did operate as fraud or deceit. The Order further states that such conduct may have included the making of false and misleading statements

concerning, among other things, the management of the issuers, control of the issuers, and the manipulation of the markets for the issuers' securities. The Order states that the above described conduct, if true, may constitute violations of Sections 17(a) of the Securities Act and Sections 10(b) and 15(d) of the Exchange Act and rules promulgated thereunder.

The relevance in administrative investigations cannot be reduced to a "formula." Oklahoma Press Publishing Co. v. Walling, 327 U.S. 186, 209 (1946). Rather, the "relevance and adequacy or excess in the breadth of the Subpoena are matters variable in relation to the nature, purposes and scope of the inquiry." Id. The Court's refusal to set a rigid standard of relevance tacitly acknowledges the unreasonableness of requiring the Commission to answer, during subpoena enforcement actions, possibly doubtful questions of fact and law that its investigation is designed to illuminate. See SEC v. Savage, 513 F.2d 188, 189 (7th Cir. 1975).

In determining the relevance of the materials sought by the Subpoena here, it is appropriate for this Court to consider the information prompting the Commission's investigation. As indicated in the Commission's Order, the staff had obtained information that certain blind pool issuers and certain individuals may have made false and misleading statements concerning, among other things, the management of the issuers, control of the issuers, and the manipulation of the markets for the issuers' securities. Further investigation revealed Calico

14

to be a blind pool issuer that may have engaged in the same fraudulent activities. Brenman Raskin and certain of its individual attorneys may have provided services to Calico in connection with its issuance of securities or its preparation of reports required to be filed with the Commission. Thus, the documents maintained by Brenman Raskin are directly relevant to the Commission's investigation.

3.  **The Administrative Process Has Been Followed**

The Commission's Rules of Practice and Investigations require that the Commission issue a Formal Order of Investigation. See 17 C.F.R. § 203.1 et seq.; Securities and Exchange Commission v. Blackfoot Bituminous, Inc., 622 F.2d 512, 514 (10th Cir. 1980). On July 24, 1987, the Commission duly issued a Formal Order of Investigation captioned In the Matter of Certain Issuers (Brissman Aff. at ¶ 2, Exhibit 1). After receiving the Order, one of the Commission's designated officers issued the Subpoena in question, and served it by certified mail in accordance with Rule 8 of the Commission's Rules relating to investigations, 17 C.F.R. § 203.8, and Rule 14(b)(3) of the Commission's Rules of Practice, 17 C.F.R. § 201.14(b)(3). (Brissman Aff. at ¶¶ 4, 5 and 6; Exhibits 3, 4 & 5). Hence, all the required administrative steps have been taken.

4. **The Subpoena Is Not Vague and the Burden Of Compliance Is Not Unreasonable**

The Commission utilized a Rider to the Subpoena to describe the required documents. (Brissman Aff. at ¶ 4, Exhibit 3). The

15

Rider describes with specificity the documents to be produced. (Brissman Aff. at ¶ 4, Exhibit 3). Clearly, Brenman Raskin understood the Subpoena and Rider. It produced some of the documents requested by the Subpoena and Rider, and, with specificity, refused to produce other documents so required. (Brissman Aff. at ¶ 7, Exhibit 6). In addition, the Subpoena is limited in time and scope. (Brissman Aff. at ¶ 4, Exhibit 3). Finally, the burden of compliance is reasonable, as evidenced by Brenman Raskin's partial compliance and its failure to object to full compliance on any ground other than attorney-client privilege. (Brissman Aff. at ¶ 7, Exhibit 6).

V.

**CONCLUSION**

For the reasons set forth above, the Commission respectfully requests that this Court order Brenman, Raskin, Friedlob & Tenenbaum, P.C., to fully comply with the March 26, 1992 Subpoena Duces Tecum previously issued.

_____
Ellen N. Hersh

_____
Jonathan H. Stein

_____
Michael J. Riordan

Attorneys for Applicant
Securities and Exchange Commission
Northwestern Atrium Center
500 W. Madison St., Suite 1400
Chicago, Illinois 60661-2511

Telephone:  312/353-7390