```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
SECURITIES AND EXCHANGE                 :   13 Civ. 1735 (GBD) (JCF)
COMMISSION,                             :
                                        :
          Plaintiff,                    :
                                        :           MEMORANDUM
   - against -                          :           AND  ORDER
                                        :
CARRILLO HUETTEL LLP, LUIS J.           :
CARRILLO, WADE D. HUETTEL,              :
GIBRALTAR GLOBAL SECURITIES,            :
WARREN DAVIS, JOHN B. KIRK,             :
BENJAMIN T. KIRK, DYLAN L. BOYLE,       :
JAMES K. HINTON JR., LUNIEL DE          :
BEER, JOEL P. FRANKLIN, PACIFIC         :
BLUE ENERGY CORPORATION, and            :
TRADESHOW MARKETING COMPANY LTD.,       :
                                        :
          Defendants.                   :
- - - - - - - - - - - - - - - - - - - -:
```
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

This is an enforcement action brought by the Securities and Exchange Commission (the "SEC"), alleging that the defendants engaged in a "pump and dump" scheme in connection with Tradeshow Marketing Company Ltd. ("Tradeshow") and Pacific Blue Energy Corporation ("Pacific Blue"). (Amended Complaint ("Am. Compl."), ¶ 1). Two of the defendants, Luis Carrillo and Wade Huettel, are attorneys who, together with their firm, Carrillo Huettel LLP ("CHLLP"), are alleged to have furthered the illegal activity by assisting the promoters to acquire the Pacific Blue corporate shell, by drafting misleading public filings and legal opinions, by

1

allowing the promoters to funnel sales proceeds through the law firm, and by obscuring the promoters' ownership of Pacific Blue. (Am. Compl., ¶¶ 2-4).  According to the SEC, the defendants' activities constituted securities fraud in violation of Section 17(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77q(a), and Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, as well as sale of unregistered securities, in violation of Sections 5(a) and (c) of the Securities Act, 15 U.S.C. § 77e(a) & (c).  (Am. Compl., ¶ 9).

The SEC now moves pursuant to Rule 37 of the Federal Rules of Civil Procedure for an order (1) compelling production of all documents previously withheld by Mr. Carrillo, Mr. Huettel, and CHLLP on grounds of attorney-client privilege, (2) compelling the testimony of Mr. Carrillo and Mr. Huettel on issues for which they previously asserted the privilege, and (3) finding that defendants Benjamin T. Kirk and Luniel de Beer waived the privilege by relying on the advice-of-counsel defense.  (Plaintiff's Motion to Compel ("Pl. Memo.") at 1, 5-18).  I will discuss the relevant facts as they pertain to specific aspects of the legal analysis.

Discussion

    A. Attorney-Client Privilege

The attorney-client privilege protects from disclosure "(1) a

communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007) (citing United States v. Construction Products Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996)); accord United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011); National Immigration Project of the National Lawyers Guild v. United States Department of Homeland Security, 842 F. Supp. 2d 720, 728 (S.D.N.Y. 2012).  The privilege protects not only the advice of the attorney to the client, but also the information communicated by the client that provides a basis for giving advice. See Upjohn Co. v. United States, 449 U.S. 383, 390 (1981); In re Six Grand Jury Witnesses, 979 F.2d 939, 943-44 (2d Cir. 1992); Oak-Jin Oh v. Sim & Park, LLP, No. 12 MC 66, 2012 WL 1193755, at *1 (S.D.N.Y. April 10, 2012).  "It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship, a burden not discharged by mere conclusory or ipse dixit assertions." In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F.2d 223, 224-25 (2d Cir. 1984) (citations omitted) (internal quotation marks omitted); accord von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 144 (2d Cir. 1987); Schanfield v. Sojitz Corp. of America, 258 F.R.D. 211, 214 (S.D.N.Y. 2009).  In a case such as

this, which is governed by federal law, "interpretation of the privilege's scope is guided by 'the principles of the common law . . . as interpreted by the courts . . . in the light of reason and experience.'" Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998) (quoting Fed. R. Evid. 501).

B. CHLLP Documents

CHLLP has submitted a 27-page privilege log indicating that it has withheld documents relating to legal advice concerning the following clients: Skymark Research, Scottsdale Capital Advisors, Gibraltar Global Securities Inc. ("Gibraltar"), Punch Line Games, Pacific Blue, Tradeshow, GMU Wireless, and Sandstrom OnTV Company ("Sandstrom"). (Privilege Log - Carrillo Huettel LLP - In Re: Skymark No. NY-8377, attached as Exh. A to Declaration of Todd D. Brody dated Feb. 24, 2015 ("Brody 2/24/15 Decl.")). The SEC contends that (1) the corporate entities that CHLLP once represented are now defunct and therefore no attorney-client privilege can be asserted on their behalf (Pl. Memo. at 5-8); (2) any privilege that might once have existed has been waived (Pl. Memo. at 8, 12-13); and (3) even if there is a privilege that may currently be asserted, the crime/fraud exception applies (Pl. Memo. at 13-18). Because the first argument is fully dispositive with respect to most of the entities at issue, I will not reach the other arguments except where necessary.

The Fourth Circuit has characterized the issue of whether "the corporate attorney-client privilege survives the dissolution of the corporate entity" as an "unsettled legal question." In re Grand Jury Subpoena # 06-1, 274 F. App'x 306, 309 (4th Cir. 2008) (per curiam); see also Nelson Construction Co. v. United States, No. 51205C, 2008 WL 5049304, at *2 (Fed. Cl. Nov. 18, 2008) ("[T]he issue of whether the attorney-client privilege can be invoked by a defunct corporation is ultimately unsettled."); Lewis v. United States, No. 02-2958, 2004 WL 3203121, at *3 (W.D. Tenn. Dec. 7, 2004) ("[C]ourts are split over whether a corporation is entitled to protection from the attorney-client privilege after the corporation's 'death.'"). The weight of authority, however, holds that a dissolved or defunct corporation retains no privilege. See In re Behr Dayton Thermal Products, LLC, 298 F.R.D. 536, 541-43 (S.D. Ohio 2014); Trading Technologies International, Inc. v. GL Consultants, Inc., Nos. 05-4120, 05 C 5164, 2012 WL 874322, at *4 (N.D. Ill. March 14, 2012); Official Committee of Administrative Claimants ex rel. LTV Steel Co. v. Moran, 802 F. Supp. 2d 947, 948-49 (N.D. Ill. 2011); Lopes v. Viera, 688 F. Supp. 2d 1050, 1059-69 (E.D. Cal. 2010); TAS Distributing Co. v. Cummins Inc., No. 07-1141, 2009 WL 3255297, at *1-2 (C.D. Ill Oct. 7, 2009); City of Rialto v. United States Department of Defense, 492 F. Supp. 2d 1193, 1200 (C.D. Cal. 2007); Gilliland v. Geramita, No. 2:05-CV-

1059, 2006 WL 2642525, at *4 (W.D. Pa. Sept. 14, 2006); Lewis, 2004 WL 3203121, at *4; In re Fundamental Long Term Care, Inc., No. 8:11-bk-22258, 2012 WL 4815321, at *8-10 (Bkrtcy. M.D. Fla. Oct. 9, 2012).

Several rationales support this conclusion. First, the interests that are furthered by the extension of the privilege beyond the death of a natural person simply do not apply in the context of a corporate entity. In Swidler & Berlin, the Supreme Court found that "[i]t has been generally, if not universally, accepted, for well over a century, that the attorney-client privilege survives the death of the client" where the client is an individual. 524 U.S. at 410. The Court reasoned that "[k]nowing that communications will remain confidential even after death encourages the client to communicate fully and frankly with counsel" because "[c]lients may be concerned about reputation, civil liability, or possible harm to friends or family. Posthumous disclosure of such communications may be as feared as disclosure during the client's lifetime." Id. at 407. By contrast, there is no "tradition" of the privilege surviving the demise of a corporation. Furthermore, "[t]he possibility that a corporation's management will hesitate to confide in legal counsel out of concern that such communication may become unprivileged after the corporation's demise is too remote and hypothetical to outweigh the

6

countervailing policy considerations supporting discoverability." Gilliland, 2006 WL 2642525, at *4. For example, after dissolution, "the corporation would no longer have any goodwill or reputation to maintain." Id.; accord Trading Technologies International, 2012 WL 874322, at *4 ("When the corporation is gone, so to is its interest in protecting its communications; the need to promote full and frank exchanges between an attorney and agents of his corporate clients disappears when the corporation employing those clients has departed."); City of Rialto, 492 F. Supp. 2d at 1200. Nor are there tangible assets left to protect. See City of Rialto, 492 F. Supp. 2d at 1200 ("As there are usually no assets left and no directors, the protections of the attorney-client privilege are less meaningful to the dissolved corporation."); Lewis, 2004 WL 3203121, at *4 ("The company is bankrupt and has no assets, liabilities, directors, shareholders, or employees.").

Next, as a practical matter, there is no one who can speak for a defunct corporation in order to assert the privilege. While a corporate entity is still in the process of dissolution, there may be a trustee or someone serving a similar function who represents the corporation. See Commodities Futures Trading Commission v. Weintraub, 471 U.S. 343, 352-53 (1985) (holding that bankruptcy trustee retains control of corporate privilege for pre-bankruptcy communications); Official Committee of Administrative Claimants,

7

802 F. Supp. 2d at 949 ("If the trustee controls the privilege, then the privilege must still exist.  Similarly, a dissolved corporation should be permitted to assert its privilege during the windup process at least until all matters involving the company have been resolved and no further proceedings are contemplated." (internal quotation marks omitted)).  But once a corporation is truly extinct, it has lost practical ability to assert the privilege.  See Fundamental Long Term Care, 2012 WL 4815321, at *9 ("So there is no one left to assert or waive the privilege on [the corporation's] behalf."); Gilliland, 2006 WL 2642525, at *3 ("[T]here is no current management personnel who can now assert the attorney-client privilege on behalf of the corporation.").

Finally, limiting the duration of the attorney-client privilege to the life of a corporation is consistent with the principle that the privilege is to be construed narrowly because it withholds relevant information from the judicial process.  See City of Rialto, 492 F. Supp. 2d at 1200; Gilliland, 2006 WL 2642525, at *4; see generally Fisher v. United States, 425 U.S. 391, 403 (1976) ("[S]ince the privilege has the effect of withholding relevant information from the fact-finder, it applies only where necessary to achieve its purpose."); County of Erie, 473 F.3d at 418 (holding that courts should "construe the privilege narrowly because it renders relevant information undiscoverable").

Cases that hold that the privilege survives the dissolution of a corporation generally do so on the basis of state law. See PCS Nitrogen, Inc. v. Ross Development Corp., No. 2:09-3171, 2011 WL 3665335, at *4 (D.S.C. Aug. 19, 2011); Wallace v. Huntington National Bank, Nos. 2:09-CV-104, 2:10-CV-469, 2010 WL 3603494, at *7 (S.D. Ohio Sept. 10, 2010).  In diversity cases, this is consistent with Rule 501 of the Federal Rules of Evidence, which provides that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness . . . shall be determined in accordance with State law."  Fed. R. Evid. 501. Thus, in PCS Nitrogen, South Carolina privilege law applied to state law claims of fraudulent conveyance, civil conspiracy, and breach of fiduciary duty.  2011 WL 3665335, at *1.  Likewise, in Wallace, the court relied on Ohio law to determine whether a defunct corporation retained the privilege where the plaintiff asserted state law claims of breach of obligations under a guaranty and a note.  2010 WL 3603494, at *1.  These cases do not undermine the principle that where federal law supplies the rule of decision, as it does here, the question of whether the corporate attorney-client privilege survives the demise of the corporation is answered

by reference to federal common law.[1]

This is not to say that state law is altogether irrelevant. It may dictate, for example, whether a corporation is, in fact, defunct, such that there is no privilege to be asserted. Indeed, in this case the parties debate whether the corporations at issue have ceased to exist. The SEC has presented evidence that Pacific Blue's business license expired and that its status as a domestic Nevada corporation was revoked on April 30, 2011. (Printout from Nevada Secretary of State for Pacific Blue Energy Corp., attached as Exh. K to Brody 2/24/15 Decl.). It also represents that the last public filing made by Pacific Blue was on November 15, 2011, and was simply a notification of its inability to file timely quarterly financial statements. (Pl. Memo. at 5). Counsel for CHLLP, Mr. Carrillo, and Mr. Huettel argues that the SEC's position ignores communications to the SEC from the President and Chairman

---

[1] One case that deviates from this precept is Official Committee of Administrative Claimants v. Bricker, No. 1:05 CV 2158, 2011 WL 1770113 (N.D. Ohio May 9, 2011). There, even though the plaintiffs asserted claims of bankruptcy fraud under federal as well as state law, the court assessed the corporate attorney-client privilege in light of state corporations law. Id. at *2. I respectfully disagree with this result because it cannot be reconciled with Rule 501, which governs "vertical choice of law" -- that is, the determination of whether federal or state law applies, 23 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5432 (1980) at 846 -- for "all issues pertaining to the applicability of a privilege in a given set of circumstances." Fitzpatrick v. American International Group, Inc., 272 F.R.D. 100, 104-05 (S.D.N.Y. 2010).

of Pacific Blue that post-date the company's apparent demise. (Letter of William B. Fleming dated March 20, 2015 ("Fleming Letter") at 4). They also contend that by moving for default against Pacific Blue, the SEC implicitly acknowledged its ongoing existence. (Fleming Letter at 4). Neither of the defendants' arguments is persuasive. The fact that former officers attempted to exercise some role in connection with Pacific Blue does not demonstrate that they had the authority to do so. Nor do the SEC's efforts to protect its interests constitute any admission as to the status of the corporation. In short, the SEC's evidence has not been rebutted, and Pacific Blue -- the party with the burden of demonstrating the applicability of the privilege -- has not shown that it continues to exist such that it could assert any privilege.

Similarly, the SEC has proffered evidence that Tradeshow's status as a Nevada domestic corporation was revoked when its business license expired on December 31, 2011. (Printout from Nevada Secretary of State for Tradeshow Marketing Company Ltd., attached as Exh. L to Brody 2/24/15 Decl.). Its last public filing was on July 17, 2008. (Pl. Memo. at 5). No party has presented any contrary evidence, and Tradeshow is therefore incapable of asserting the privilege.

Sandstrom was an affiliate of Tradeshow, which apparently acquired all of Sandstrom's assets sometime prior to December 2006.

(Excerpts from Form 10-SB/A, Amendment No. 3, for Tradeshow Marketing Co., Ltd., attached as Exh. A to Declaration of Todd D. Brody dated March 27, 2015 ("Brody 3/27/15 Decl.")). Thus, since Tradeshow is defunct, so too is Sandstrom. In any event, Sandtrom's business license expired and its status as a Nevada Corporation was revoked on March 31, 2011. (Printout from Nevada Secretary of State for Sandstrom OnTV Company, attached as Exh. C to Brody 3/27/15 Decl.). It is therefore unable to assert a privilege.

Next, the SEC has submitted a printout from the Government of Alberta, Canada, showing that the "Legal Entity Status" of Skymark Media Group Ltd. is "Struck." (Printout of Corporate Registration System, Government of Alberta, attached as Exh. M to Brody 2/24/15 Decl.). A corporation may be struck from Alberta's Corporate Registry for failure to file required annual returns. (Service Alberta, Dissolve or Revive a Legal Entity, available at http://www.serviceablberta.gov.ab.ca/707.cfm (last visited April 7, 2015). In response, defendant Benjamin T. Kirk contends that CHLLP's privilege log lists the firm's client as "Skymark Research," not Skymark Media Group Ltd., and that since these are separate entities, there is no evidence that Skymark Research is defunct. (Memorandum of Law in Opposition to the Securities and Exchange Commission's Motion to Compel the Production of Privileged

Communications ("Kirk Memo.") at 3). In support of this argument, Mr. Kirk points out that in the SEC's pleadings, he is identified as a principal of Skymark Research, while defendant John Kirk is listed as sole director of Skymark Media Group Ltd. (Kirk Memo. at 3; Am. Compl., ¶¶ 20-21). However, there is compelling evidence that Skymark Research was no more than a division of Skymark Media Group Ltd. and had no independent corporate existence. For example, the mission statement submitted by Skymark Media Group Ltd. to the Alberta Securities Commission references Skymark Research along with two other entities (Emerging Stock Report and Liberty Analytics) as if they were all branches of Skymark Media Group Ltd. (Mission Statement for Skymark Media Group Ltd. ("Mission Statement"), attached as Exh. D to Brody 3/27/15 Decl.). And, while Benjamin T. Kirk makes much of the fact that the SEC's Amended Complaint associates him with Skymark Research and John Kirk with Skymark Media Group Ltd., it is Benjamin T. Kirk who submitted Skymark Media Group Ltd.'s mission statement to the Canadian regulator. (Mission Statement). Similarly, a nondisclosure agreement for an employee of Skymark Media Group Ltd. was drafted by the account manager of Skymark Research, forwarded for review to Benjamin T. Kirk, and has a signature line for the account manager (characterized there as the Chief Operating Officer) to sign on behalf of "Emerging Stock Report, Skymark

Research, Liberty Analytics Co., and The Entire Skymark Media Group." (E-mail from Joshua Anderson dated March 29, 2010, attached as Exh. E to Brody 3/27/15 Decl.). Skymark Research, then, is as extinct as Skymark Media Group Ltd., and neither retains the attorney-client privilege.

Benjamin T. Kirk also points out that CHLLP's privilege log lists documents related to two entities, Punch Line Games and GMU Wireless, which are never mentioned in the SEC's pleadings. (Kirk Memo. at 1-2). Indeed, the SEC has not suggested how documents related to these businesses might be relevant, nor has it demonstrated that they are defunct or otherwise lack the ability to assert the privilege. Accordingly, the SEC has withdrawn for the present its request for these documents. (Plaintiff's Memorandum of Law in Further Support of Its Motion to Compel at 4 n.2).

Finally, one of the documents listed on CHLLP's privilege log is a communication between counsel and Gibraltar Global Securities, Inc. ("Gibraltar"). I previously determined in a related action that Gibraltar has not been dissolved. <u>Securities and Exchange Commission v. Gibraltar Global Securities, Inc.</u>, No. 13 Civ. 2575, 2015 WL 1514746, at *2-3 (S.D.N.Y. April 1, 2015). It is therefore capable of asserting a privilege, which CHLLP properly did on its behalf. There remains the possibility, however, that the document at issue is subject to the crime/fraud exception. CHLLP shall

14

therefore submit the Gibraltar document (identified as CH645-46) for my in camera review.

To the extent that I have determined that entities are incapable of asserting the privilege, CHLLP shall produce documents previously withheld that relate to those entities.[2] Likewise, Mr. Carrillo and Mr. Huettel shall testify concerning communications with those entities.

B. Implied Waiver

The SEC contends that defendants Luniel de Beer and Benjamin T. Kirk have waived the attorney-client privilege with respect to any communications with their attorneys by asserting an advice-of-counsel defense. (Pl. Memo. at 10-12). The attorney-client privilege may be waived "when the defendant asserts a claim that in fairness requires examination of protected communications." United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991). "The key to a finding of implied waiver . . . is some showing by the party arguing for a waiver that the opposing party relies on the privileged communication as a claim or defense or as an element of a claim or defense." County of Erie, 546 F.3d at 228; accord Leviton Manufacturing Co. v. Greenberg Traurig LLP, No. 09 Civ.

---

[2] To the extent that CHLLP intended to assert work product protection with respect to any document, it has provided no support whatsoever. Accordingly, CHLLP may not rely on the work product doctrine to continue to withhold documents.

8083, 2010 WL 4983183, at *4 (S.D.N.Y. Dec. 6, 2010); <u>Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas</u>, 727 F. Supp. 2d 256, 271 (S.D.N.Y. 2010) (collecting cases). Assertion of an advice of counsel defense is the "quintessential example" of an implied waiver. <u>County of Erie</u>, 546 F.3d at 228 (internal quotation marks omitted); <u>accord</u> <u>Shaub and Williams, L.L.P. v. Augme Technologies, Inc.</u>, No. 13 Civ. 1101, 2014 WL 1033862, at *3 (S.D.N.Y. March 17, 2014). Nevertheless, "whether fairness requires disclosure . . . is best decided on a case by case basis, and depends primarily on the specific context in which the privilege is asserted." <u>John Doe Co. v. United States</u>, 350 F.3d 299, 302 (2d Cir. 2003) (alteration in original) (internal quotation marks omitted); <u>see</u> <u>Freedman v. Weatherford International Ltd.</u>, No. 12 Civ. 2121, 2014 WL 3767034, at *3-4 (S.D.N.Y. July 25, 2014).

In this case, Mr. De Beer has plainly argued that he should be relieved of liability because he relied on the advice of counsel. His Answer asserts as an affirmative defense that he "acted at all times in good faith and without reckless disregard for, knowledge of, or intent to engage in any supposed wrongdoing." (Separate Answer of Defendant Luniel De Beer to the Amended Complaint at 27). This alone would not be enough to place attorney-client communications at issue. However, in moving to dismiss the

16

Complaint, he explicitly contended that he was "entitled to rely on counsel when it came to securities law issues." (Memorandum of Law In Support of Defendant Luniel De Beer's Motion to Dismiss ("de Beer Dismissal Memo.") at 1-2). Further, he argued that "[i]n its capacity as corporate counsel, Carrillo Huettel crafted the transactions; drafted the public filings and corporate documents and opined that they complied with federal securities laws. As a non-lawyer, De Beer was entitled to rely on corporate counsel's opinions on matters of securities law, particularly complex ones." (de Beer Dismissal Memo. at 5). And, in his reply brief on the motion to dismiss, Mr. de Beer maintained that "the Complaint established the elements of good faith based upon advice of counsel" and that "[s]igning documents drafted or blessed by counsel cannot amount to an extreme departure from accepted standards." (Reply Memorandum in Support of Motion to Dismiss of Defendant Luniel de Beer at 3). Mr. de Beer cannot make these assertions and at the same time cast the cloak of privilege over the communications on which he purports to have relied as well as others addressing the same subject matter. He shall therefore be required to produce documents and provide testimony with respect to the advice he received from counsel.

The analysis with respect to Benjamin T. Kirk is somewhat different. Like Mr. de Beer, Mr. Kirk asserted an affirmative

17

defense in which he contends that "Plaintiff's claims are barred as the Defendant reasonably relied upon the advice of legal counsel and other professionals with respect to the transactions that are the subject of the Amended Complaint." (Answer at 15). However, unlike Mr. de Beer, Mr. Kirk has taken no further steps to inject advice of counsel into the litigation. He is therefore entitled to choose whether he will pursue an advice-of-counsel defense, a choice he must now make. Unless Mr. Kirk advises the SEC within one week of the date of this Order that he is abandoning any such defense, he will be deemed to have waived the attorney-client privilege with respect to advice concerning the relevant transactions.

Conclusion

For the reasons set forth above, the SEC's motion to compel (Docket no. 192) is granted in part and denied in part. CHLLP, Luis J. Carrillo, and Wade D. Huettel shall produce within one week of the date of this Order all documents previously withheld on the basis of privilege relating to Pacific Blue, Tradeshow, Sandstrom, and Skymark Media Group Ltd. (including Skymark Research). They shall also testify with respect to communications with these entities. They need not, however, produce privileged documents or testify as to privileged communications with respect to Punch Line Games, GMU Wireless, or Gibraltar, though the Gibraltar document

shall be submitted for my in camera review within one week. Luniel de Beer has waived the attorney-client privilege by asserting an advice-of-counsel defense and may not withhold related documents or object to testifying concerning pertinent legal advice. Benjamin T. Kirk will likewise waive the attorney-client privilege unless, within one week of the date of this Order, he advises the SEC that he is withdrawing any advice-of-counsel defense.

SO ORDERED.

*[signature]*
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       April 8, 2015

Copies transmitted this date:

Todd D. Brody, Esq.
Andrew M. Calamari, Esq.
Joshua M. Newville, Esq.
Katherine S. Bromberg, Esq.
Michael D. Paley, Esq.
Securities & Exchange Commission
Three World Financial Center
New York, NY 10281

Thomas J. Curran, Esq.
Doris D. Short, Esq.
Jonathan S. Konovitch, Esq.
Peckar & Abramson, P.C.
41 Madison Ave.
20th Floor
New York, NY 10010

Juan M. Marcelino, Sr., Esq.
David E. Fialkow, Esq.
Nelson Mullins Riley & Scarborough LLP
One Post Office Sq., 30th Floor
Boston, MA 02109

William B. Fleming, Esq.
Gage, Spencer & Fleming, LLP
410 Park Ave.
New York, NY 10022

Nicholas M. DeFeis, Esq.
Philip C. Patterson, Esq.
Allison S. Menkes, Esq.
De Feis O'Connell & Rose, P.C.
500 Fifth Ave., 26th Floor
New York, NY 10110

Steven D. Feldman, Esq.
Murphy & McGonigle, P.C.
1185 Avenue of the Americas, 21st Floor
New York, NY 10036

James D. Sallah, Esq.
Mark J. Astarita, Esq.
Sallah Astarita & Cox, LLC
60 Pompton Ave.
Verona, NJ 07044

David R. Chase, Esq.
David R. Chase P.A.
1700 East Las Olas Blvd., Suite 305
Fort Lauderdale, FL 33301

David U. Gourevitch, Esq.
Law Office of David Gourevitch, P.C.
950 Third Ave., 32nd Floor
New York, NY 10022