# EXHIBIT 9

# Gibraltar Global Securities Inc.

Maude Beatrice House • #35 Village Road • P.O. Box N-9609 • Nassau, Bahamas • (242) 394-2553

Account Number: ____4285
Open Date: __/__/__

## BROKERAGE ACCOUNT APPLICATION

Type of Account: ☑ Individual    New Account: ☑ Yes
☐ Joint    ☐ No. Existing account number: _____
☐ Corporate
☐ Other    To avoid delays in processing your application, complete all applicable sections.

| APPLICANT | CO-APPLICANT (IF ANY) |
|---|---|
| COMPLETE ACCOUNT TITLE | |

**APPLICANT:**
- ☑ MR. / ☐ MS. / ☐ MRS.
- NAME: FIRST: Ben   MIDDLE: Thompson   LAST: Kirk
- STREET ADDRESS (P.O. Box Not Permitted): [redacted]
- CITY: Vancouver   STATE: BC   ZIP: V6Z 2L1   COUNTRY: Canada
- HOME TELEPHONE #: 604-605-1577
- WORK TELEPHONE #:
- CELL PHONE #: 604-338-2235
- FAX #:
- E-MAIL ADDRESS:
- MAILING ADDRESS (if different from home address; P.O. Boxes may be used):
- DATE OF BIRTH: [redacted]/78
- COUNTRY OF CITIZENSHIP: Canada
- PASSPORT NUMBER: [redacted]2317
- OCCUPATION:
  - ☐ EMPLOYED (Please specify occupation)
  - ☑ SELF-EMPLOYED   ☐ UNEMPLOYED   ☐ RETIRED   ☐ HOMEMAKER   ☐ STUDENT
- EMPLOYER (If Self-Employed, please specify job function): BTK Financial / Financial Services
- EMPLOYER ADDRESS AND PHONE #:
- FINANCIAL SUMMARY:
  - TOTAL ASSETS: 200K
  - LIQUID NET WORTH: 100K
  - TOTAL LIABILITIES: 0
  - ANNUAL INCOME: 250

### TYPE AND AMOUNT OF INITIAL FUNDING
CHECK ALL THAT APPLY
☐ WIRE   ☐ CASHIERS CHECK   ☐ SECURITIES   ☐ OTHER (Please specify) _____
AMOUNT _____   NAME OF REMITTING BANK/SECURITIES FIRM _____

### INVESTMENT CRITERIA
| INVESTMENT KNOWLEDGE | INVESTMENT OBJECTIVES | TIME HORIZON | RISK TOLERANCE |
|---|---|---|---|
| ☐ SOPHISTICATED  ☐ LIMITED | ☐ SAFETY  ☐ GROWTH | ☐ 3-5 YEARS  ☐ 5-10 YEARS | ☐ LOW  ☐ MEDIUM |
| ☑ GOOD  ☐ POOR | ☐ INCOME  ☑ SPECULATION | ☑ 10 OR MORE YEARS | ☑ HIGH |

### REQUESTED PRODUCTS AND SERVICES
CHECK ALL THAT APPLY
☑ STOCKS   ☐ MUTUAL FUNDS   ☐ OPTIONS   ☐ DEBIT CARD
☐ BONDS   ☐ FUTURES   ☐ MONEY MARKET   ☐ OTHER (please specify) _____

CONTINUED ON NEXT PAGE

Confidential pursuant to Securities and Exchange Act s.24(d). DO NOT DISCLOSE TO CRIMINAL AUTHORITIES. Do not disclose to third parties except for purposes of SEC investigations and proceedings. Call OIA for further information at x16690.

SCB-0001058

# Gibraltar Global Securities Inc.

Maude Beatrice House • #35 Village Road • P.O. Box N-9609 • Nassau, Bahamas • (242) 394-2553

GGSI USE ONLY
Account Number: ██████ 1255
Open Date: ___/___

## BROKERAGE ACCOUNT APPLICATION (continued)

### ACCOUNT INFORMATION

| PURPOSE OF ACCOUNT | ESTIMATED SIZE OF ACCOUNT | ESTIMATED MONTHLY TRADING VOLUME | SOURCE OF FUNDS |
|---|---|---|---|
| | | | |

### CORPORATE ACCOUNT INFORMATION

#### BENEFICIAL OWNER INFORMATION

MR. ☑  NAME: FIRST: Ben  MIDDLE: Thompson  LAST: Kirk
MS. ☐
MRS. ☐

STREET ADDRESS (P.O. Box Not Permitted): ████████

CITY: Van  STATE: BC  ZIP: V6Z-2M  COUNTRY: CANADA

HOME TELEPHONE #: 604-605-1577
WORK TELEPHONE #:
CELL PHONE #: 604-338-2235

FAX #:
E-MAIL ADDRESS: benkirk@telus.net

#### COMPANY INFORMATION

LIST ALL COMPANY DIRECTORS AND OFFICERS

NAME _____  ADDRESS _____
POSITION _____

NAME _____  ADDRESS _____
POSITION _____

NAME _____  ADDRESS _____
POSITION _____

NAME _____  ADDRESS _____
POSITION _____

NAME _____  ADDRESS _____
POSITION _____

### SIGNATURE AND AUTHORIZATION

I/We the undersigned certify that the information provided in this application is true and complete and Gibraltar Global Securities Inc. may rely thereon until the undersigned sends written notice of any significant changes. I/We further acknowledge that I/We have received the Client Agreement and agree to the terms and conditions set therein. The undersigned requests that the client account be opened and agrees to the terms of the Client Account Agreement.

Ben Kirk
APPLICANT NAME (please print)

Ben Kirk
APPLICANT SIGNATURE

2007-08-16
DATE

_____
CO-APPLICANT NAME (please print)

_____
CO-APPLICANT SIGNATURE

_____
DATE

Confidential pursuant to Securities and Exchange Act s.24(d).
DO NOT DISCLOSE TO CRIMINAL AUTHORITIES. Do not disclose to third parties except for purposes of SEC investigations and proceedings. Call OIA for further information at x16690.

SCB-0001059

# Gibraltar Global Securities Inc.

Maude Beatrice House • #35 Village Road • P.O. Box N-9609 • Nassau, Bahamas • (242) 394-2553



GGSI use only
Account Number: _____ 42853
Open Date: ___/___/___

## CLIENT AGREEMENT

**1  Introduction**

1.1 This Agreement takes effect when you complete, sign and return the account opening forms to us. GGSI opens accounts online, however the said agreement must be executed and received by GGSI within 10 business days of commencement of the internet account; failing receipt of the account opening documentation GGSI reserves the right to restrict/close the account.

1.2 These general terms and conditions follow a format common to all companies within the Gibraltar Global Securities Inc. and reference is therefore made to a wide range of business activities. It must be appreciated that Gibraltar Global Securities Inc. (hereinafter referred to as "GGSI") will not necessarily undertake all of the business activities referred to in these general terms and conditions.

1.3 In these terms and conditions unless the context otherwise requires words importing the singular shall include the plural and the masculine gender shall include the feminine and the neuter and vice versa in each case and words importing persons shall include bodies of persons whether corporate or unincorporated.

1.4 These general terms and conditions apply to all business undertaken by GGSI of whatever nature whether as, corporate managers, investment managers, brokers, agents, advisers or otherwise and the term "Account" as used herein shall include each and every type of business arrangement with GGSI whether covered by a form agreement or not and the "Account Holder" as used herein shall include each and every person or organization that holds an Account with GGSI.

1.5 The expression "Authorized Person" as used herein means the Account Holder and any person company or other entity from whom GGSI is authorized or instructed by the Account Holder to accept directions recommended or advice whether such authorization shall be general or limited and whether GGSI shall be acting as corporate managers investment managers brokers agents advisers or otherwise.

1.6 These general terms and conditions are divided into sections some of which deal principally with particular types of business and some of which deal with matters of general application. It must be appreciated that there is a degree of overlap between sections and that in any given situation GGSI may be performing several functions.

1.7 These general terms and conditions and the relationship between GGSI and the Account Holder shall be governed by and construed in accordance with the laws of the Commonwealth of the Bahamas and it is irrevocably agreed that the GGSI of the Bahamas are to have jurisdiction to settle any disputes which may arise out of or in connection with these terms and conditions and the said relationship and that accordingly any suit action or proceeding arising out or in connection with these terms and conditions and the said relationship (in this clause referred to as "Proceedings") may be brought in such courts. Nothing in this clause shall limit the right of GGSI to take Proceedings against the Account Holder in any other court of competent jurisdiction nor shall the taking of Proceedings in one or more jurisdictions preclude the taking of Proceedings in any other jurisdiction whether concurrently or not.

**2  Investments to and from an Account**

2.1 Payments of funds to the credit of an Account may be made by electronic transfers checks promissory notes bankers draft bills of exchange acceptances negotiable instruments or other orders for the payment of money or other instruments (hereinafter referred to as "Instruments") whether or not the Account Holder is a party to the same but in the case of any joint account GGSI shall abide by any instruction to the contrary. GGSI is authorized to endorse any Instrument presented by the Account Holder for credit to the Account if the same shall be presented unendorsed by the Account Holder.

2.2 The Account Holder shall indemnify GGSI against all claims losses or expenses made against or sustained by GGSI and/or any liability incurred by GGSI under any law having effect within the jurisdiction where any Instrument is or may be payable including without limitation any claim loss expense and/or liability which may arise by reason of the endorsement of such Instrument by GGSI.

2.3 Payments from an Account may be made by GGSI at the risk of the Account Holder by cheque bank draft mail electronic transfer or by any other acceptable means.

2.4 GGSI undertakes the custody and normal administration in all kinds of securities. GGSI is hereby authorized to deposit with third party depositaries in its own name or in the name of its nominees, for the account of the Account Holder such securities. The deposit is made at the sole risk of the Account Holder who is responsible for payment of taxes, charges and insurance costs, and the Account Holder accepts the restrictions and other measures in force at the place of deposit, these securities, metals and coins will be kept and administered by the third party depositories in accordance with their local law.

2.5 Unless the Account Holder expressly required that his securities, futures/options contracts precious metals and coins be kept separately, and pays the additional cost involved, GGSI is authorized to place them in the general deposit of GGSI, of a third party depositary, or indeed to remit them to a collective deposit center.

2.6 When the securities, futures /options contracts metals or coins are to be kept abroad, they are subject to the laws and customs in force at the place of safekeeping. Securities registered in the name of the Account Holder and those that are to be kept separately for some other reason are exceptions to these rules. When securities placed in collective deposit (or in a form comparable to such deposit) are the subject of a drawing by lot, GGSI allots the securities drawn making a secondary drawing, using a method that guarantees equal chances. GGSI is prepared, but it shall not obliged to assist the Account Holder in protecting his interest, particularly to exercise subscription, option and conversion rights, notwithstanding the absence of obligation on the part of GGSI in relation to assisting the Account Holder in protecting his interest, GGSI may, at its discretion, do such acts as it deems to be in the Account Holder's best interest but without any liability on the part of GGSI.

2.7 The Account Holder can require assets to be returned at any time, but GGSI will not be liable for any delay in the return of the assets to the Account Holder where the delay is caused by GGSI correspondents with whom the assets have been deposited in accordance with the terms of this Agreement. In any event the Account Holder should permit GGSI a reasonable period of time to return the assets.

2.8 Purchases and sales of securities futures/options contracts and precious metals are subject to the law of the center where the operations are effected.

**3  Joint Accounts**

3.1 All investments placed to the credit of a joint account shall be the property of the Joint Account Holders as joint tenants and GGSI is authorized to rely upon and act in accordance with the instructions and request and to deal with instruments purporting to be made drawn accepted endorsed or given by any or all of the Account Holders unless otherwise specified to GGSI in writing.

3.2 Joint Account Holders (or their survivor) shall notify GGSI immediately the death of one of their number and GGSI shall been titled to call for and rely upon such evidence (if any) of death as it may deem fit. GGSI shall deal with joint accounts in accordance with the instructions of the surviving Account Holder, or failing such instructions is accordance with the current instructions governing the operation oft he account, save that no investments will be made other than to or in accordance with the directions of the surviving Account Holder.

3.3 The liability of joint Account Holders to GGSI shall be joint and several.

3.4 A notice or communication served on any one of the Account Holders shall constitute effective service on all the Account Holders.

**4  Foreign Currencies**

4.1 If funds are required to be paid invested or used to create deposits in foreign currencies the appropriate foreign exchange transactions currency restrictions and the charges involved will be for the Account.

4.2 If an Account has balances in several currencies GGSI shall unless otherwise instructed use its discretion in selecting which currency to use for a transaction.

**5  Trusteeships and Executorships**

5.1 The terms of any trusteeship or executorships business undertaken by GGSI or its affiliates are primarily governed by the terms of the relevant trust instrument or will and the relevant governing law, however the provisions of these general terms and conditions shall apply so long as the same shall not be inconsistent therewith.

5.2 In all cases GGSI may act by its proper officer without the necessity of any formal resolution of the Directors of GGSI authorizing such officer.

**6  Acts of God**

6.1 The Account Holder understands that GGSI will not be liable for loss caused directly or indirectly by government restrictions, war, strikes, "Acts of God", or any other conditions beyond the control of GGSI.

**7  Instructions**

7.1 Instructions of any Authorized Person may be accepted by GGSI if given by word of mouth letter telephone telex facsimile or any other means and the burden of proving that no such instruction have been given shall be the Account Holder's.

7.2 GGSI shall not be liable for acting in reliance upon any instructions recommendation or advice given by any Authorized Person.

7.3 GGSI accepts no responsibility for determining whether any instructions purportedly given by an Authorized Person are genuine and in fact given by an Authorized Person.

7.4 In the case of an Authorized Person who is a body corporate firm or other entity other than a single individual GGSI shall be entitled to rely upon any instructions given by any person purporting to be an officer or otherwise authorized on behalf of such Authorized Person.

7.5 Until GGSI has received written notification of revocation from the Account Holder GGSI shall not be obliged to recognize any other notification that the authority of any Authorized Person has been revoked.

7.6 In any case where GGSI is required to act upon the instructions of an Authorized Person but clear and unambiguous instructions shall not be forthcoming in timely fashion GGSI shall be authorized (but not obliged) in its complete discretion to act upon its own initiative without liability for any resulting loss.

**8  Forgeries**

8.1 Under no circumstances shall GGSI or any correspondent or agent of GGSI be liable to determine the authenticity or validity of any instrument document or communication whether purporting to be signed by an Authorized Person or a Third party, or for relying in good faith in any manner upon any such instrument document or communication which may prove to have been forged or otherwise invalid.

**9  Notices and Communications from GGSI**

9.1 Notices and other communication or correspondence from GGSI to an Account Holder shall be properly dispatched by GGSI when sent to the address nominated by the Account Holder from time to time in writing for that purpose the date of dispatch shall be presumed to be the date appearing on the GGSI copy of such notice or other communication or correspondence.

9.2 Upon The written request of The Account Holder GGSI will hold all notices and other communications or correspondence for collection by the Account Holder and will continue to hold the same until they are collected or other written instructions are received from the Account Holder. Such held notices communications or correspondence are considered delivered on the date appearing on the same.

9.3 GGSI may give effective notice to Account Holders of any amendment or addition made by GGSI to these terms and conditions pursuant to the provisions of Clause 9.1 or Clause 9.2 as appropriate.

9.4 GGSI will provide Account Holder with periodic statements at such intervals as shall be agreed with the Account Holder from time to time. Within 30 days after dispatch of a statement in accordance with Clause 9.1 or within 30 days of delivery of a statement in accordance with Clause 9.2 The Account Holder shall notify GGSI in writing of any errors omissions or other irregularities and shall thereafter cease to be entitled to raise any objection to such statement or to the propriety and charge ability of all vouchers and instruments accompanying such statement or to the correctness of the final balance shown or any other fact

**10  Internet**

10.1. GGSI agrees to provide information, advice, recommendations and research or other al g services ( to enable you to enter into a transaction with us) over our internet web site or by any other electronic measures (including E-mail).

10.2. Any use by the Account Holder of our Internet Services shall be at their sole risk. Accordingly, the Account Holder acknowledge that the internet is not a secure medium for communication of sensitive information.

10.3. Access to some areas of our Internet Services may be permitted only where the Account Holder has been issued with a password. The Account Holder must keep any password secure and shall not disclose the password to any third party without our express permission. If the Account Holder becomes aware that you password has become known to an unauthorized user, the Account Holder must inform is immediately.

10.4. GGSI shall assume that all Transactions entered into and communications made with the password were entered into or made by the Account Holder.

10.5. The Account Holder acknowledge that we have not endorsed, nor are in anyway associated with, the information or materials provided on any web site linked to ours.

10.6. GGSI shall not be liable for any direct or indirect losses, damages, cost or expenses incurred or suffered by you howsoever arising which may result from;

(a) Account Holders failure to follow instructions or directions in connection with the Internet Services; or

(b) any delay or corruption of electronic communications; or

(c) any inability to access your Account electronically; or

(d) any viruses, defects or malfunctions in connection with your access to or use of our Internet Services; or

(e) Account Holders reliance on any information or material contained in any web site linked to ours, Other than as a direct result of our gross negligence, willful default or fraud represented in such state or

**11  Indemnity**

11.1 GGSI and every current or former officer or employee of GGSI shall have an unqualified indemnity out of the Account, or as the case may be, any managed company or other property or assets in the hands of or under the control of GGSI for all costs claims demands expenses and liabilities whatsoever suffered or incurred in any manner in or about the performance of GGSI's functions and against all costs and expenses including legal expenses incurred in settling defending or compromising the same save only that this indemnity shall not extend to cover the consequences of negligence or bad faith on the part of GGSI or any officer or employee as aforesaid

11.2 This indemnity is in addition and without prejudice to any other rights or remedies otherwise available to GGSI.

**12  Advisers**

12.1 GGSI shall be entitled to retain on its own behalf or on behalf of a managed company the services of lawyers accountants and other advisers and shall be entitled to reimbursement of all fees and disbursements thus incurred.

12.2 GGSI shall be entitled to rely upon any advice so obtained if from a professional person or a person reasonably believed to be competent to give the advice, and GGSI shall in no event have any liability for anything done or omitted to be done in reliance upon such advice. If GGSI shall determine to obtain any such advice it shall not be liable for declining to act pending receipt of such advice.

**13  Fiduciary or Partial Interest of Account Holder**

13.1 Where an Account Holder is acting as a trustee or in any other fiduciary capacity where the rights or interests of the Account Holder are subject to any encumbrance equity or third party interest GGSI shall (notwithstanding any actual notice of the same to GGSI) be entitled to disregard the same and to treat the Account Holder as the absolute beneficial and unencumbered owner of the Account or other property or assets concerned subject always to any written directions from the Account Holder to GGSI and to any other agreement between GGSI and the Account Holder.

**14  Court Applications**

14.1 If courts shall consider that it is or may be or become subject to conflicting claims in respect of any Account or any other property or assets GGSI may it its entire discretion take such steps as it may deem necessary (including an application to the Court in any jurisdiction by way of inter pleader or analogous proceedings to safeguard its interests and shall not in any event be liable for complying with any order of any Court of competent jurisdiction.

14.2 GGSI shall be entitled without liability to the Account Holder pending determination of any such conflicting claim to refuse to pay or deliver to the Account Holder all or any part of the Account property or assets as aforesaid which are the subject of conflicting claims or to act in any other manner that might prove to be improper upon the

CONTINUED ON NEXT PAGE

Confidential pursuant to Securities and Exchange Act s.24(d).
DO NOT DISCLOSE TO CRIMINAL AUTHORITIES. Do not disclose to third parties except for purposes of SEC investigations and proceedings. Call OIA for further information at x16690.

SCB-0001060

# Gibraltar Global Securities Inc.

Maude Beatrice House • #35 Village Road • P.O. Box N-9609 • Nassau, Bahamas • (242) 394-2553

GGSI USE ONLY
Account Number: H285
Open Date: / /

## CLIENT AGREEMENT (continued)

final determination of the conflicting claims. GGSI shall be entitled to charge the Account Holder with the amount of any legal or other costs incurred by GGSI in safeguarding its interests as aforesaid.

**15 Rights of Lien Pledge Set-Off and Combination**
15.1 GGSI is hereby irrevocably authorized by the Account Holder in addition to any general lien or similar right to which GGSI may been titled by law to combine or consolidate all or any Accounts of The Account Holder (or any of the Account Holders if more than one) including The Account and/or to sell-off any assets of the Account Holder (or any of the Account Holders) against any obligations and liabilities of the Account Holder (or any of the Account Holders) to GGSI on any other Account or in any other respect whether such obligations and liabilities shall be actual contingent several or joint.
15.2 If upon first demand made by GGSI the Account Holder (or any of the Account Holders if more than one) fails to pay or discharge any obligations and liabilities referred to in Clause 15.1 above or alternatively fails to restore the margin of cover to GGSI's satisfactions GGSI shall be entitled to sell realize or otherwise dispose of such assets of the Account Holder (or any of The Account Holders) at its discretion and to apply the proceeds of such sale realization or disposal in reduction or discharge of such obligations and liabilities.

**16 Remuneration and Compensation**
16.1 Save where GGSI has expressly agreed in writing to the contrary its appropriate scale of fees from time to time in force shall be payable for services rendered.
16.2 In addition GGSI shall be reimbursed for all costs expenses and disbursements in or about the provision of its services or the exercise of its powers rights and remedies. GGSI is empowered to liquidate securities to cover such fees.
16.3 Liability for the fees costs expenses and disbursements of GGSI shall be that of the Account Holder and if more than one of the Account Holders jointly and severally.
16.4 The Account Holder acknowledges receipt of the current scale of fee's.

**17 Disclaimer on Advice**
17.1 It shall be the sole responsibility of The Account Holder to obtain such advice as to taxation or any other matter of law within or without the jurisdiction as may be appropriate or desirable; and under no circumstances shall GGSI have any responsibility for the efficacy for any purpose of any arrangement established by or upon the instructions of Account Holder or an Authorized Person.
17.2 GGSI in its entire discretion may require evidence where it deems this necessary that The Account Holder has engaged legal representation in connection with his projected business with GGSI. Furthermore it is the sole responsibility of the Account Holder to assure himself that such legal representation is adequate for his needs and GGSI accepts no liability or responsibility for the adequacy of such legal representation.

**18 Identification and Reference**
18.1 On the opening of an Account GGSI will require proof of the identity of an individual Account Holder by the production of a valid passport of other identification satisfactory to GGSI and will require with respect to corporate Account Holder appropriate constitutional documents and resolutions satisfactory to GGSI. GGSI will also require the Account Holder to provide references satisfactory to GGSI.
18.2 GGSI may take an independent method of verifying the identity, source of funds, or any information provided by the Account Holder on the Accounts Opening Application form at my expense.

**19 Suspect Transactions**
GGSI retains the following rights at all times over the Account Holder's account:
19.1 GGSI will constantly monitor all account activity and reserves the right to query the Account Holder regarding any transaction which GGSI might perceive as suspect.
19.2 GGSI reserves the right to request detailed information about any transaction it may deem as suspect before executing the Account Holder's transaction request.
19.3 GGSI reserves The right to return any wire transfer to its place of origin, without the consent of the Account Holder, if the transaction is deemed as suspect.
19.4 GGSI reserves the right to immediately close the account and return all funds to their place of origin without the consent of the Account Holder, if the Account Holder is unable to satisfy GGSI to the nature of any transactions which might be deemed as suspect by GGSI.
19.5 GGSI does not engage in "in and out" transactions whereby assets are transferred into the Account Holder's account and transferred back out of the Account Holder's account in a very short time period. This includes but is not limited to cash, checks, wire transfers, purchase and subsequent delivery of securities.

**20 Arbitration**
All disputes or differences whatsoever which shall at any time hereafter (whether during the continuance in effect or upon us discharge or determination) arise between the parties hereto touching or concerning this agreement or its construction or effect or as to the rights duties and liabilities of the parties hereto or either of them under or by virtue this agreement or otherwise or as to any other matter in any way connected with or arising out of or in relation to the subject matter of agreements hall in accordance with and subject to the provisions of The Arbitration Act, Chapter 168 or any statutory modification or re-enactment thereof for the time being in force be referred (unless the parties concur in the appointment of the single arbitrator) to two arbitrators (one to be appointed by each party to the dispute or difference) who shall by instrument in writing appoint an umpire immediately after themselves appointed. The parties shall be deemed to have failed to concur in appointing a single arbitrator if such arbitrator shall not have been appointed within seven clear days after service by either party on the other of a notice requesting him to concur in (lie appointment of such an arbitrator and in the event of such failure). If either party shall refuse or neglect appoint an arbitrator for seven clear days after the other party having appointed his arbiter or has served the party making default with notice to make the appointment the party who has appointed that arbitrator shall be entitled to appoint that arbitrator to act as sole arbitrator in the reference. Upon every or such reference (the arbitrator or) arbitrators and umpire shall respectively have power to take the opinion of such counsel as they or he may think fit upon any question of law that may arise and at their or his discretion to adopt any opinion so taken and to obtain the assistance of such accountant surveyor, valuer or other experts as they or he may think fit and to act upon any statements of accounts survey valuation or expert assistance obtained. And each of these parties shall do all acts and things and execute all deeds and instruments necessary to give effect to the award to be made pursuant to his arbitration agreement. The Account Holder indemnify GGSI in respect to each and every legal and administrative cost incurred in respect of each and every dispute or difference referred to arbitration pursuant to the terms hereof including all costs incurred by GGSI in such arbitrations involving the Account Holder. Not withstanding the generality of the foregoing GGSI shall be entitled to commence proceedings against the Account Holder in any and all jurisdictions as it may think fit.

**21 Signature**
21.1 The Account Holder hereby consents and agrees to all of the terms and conditions of this agreement.

_____
Account Title

**Name (Please Print)**

X _____Ben Kirk_____
Signature

_____
Name (If Joint Account)

X _____
Signature (If Joint Account)

Confidential pursuant to Securities and Exchange Act s.24(d).
DO NOT DISCLOSE TO CRIMINAL AUTHORITIES. Do not disclose to third parties except for purposes of SEC investigations and proceedings. Call OIA for further information at x16690.

SCB-0001061



August 15th, 2007

To Whom It May Concern:

Re: Ben Kirk

We are pleased to confirm that Mr. Kirk has maintained satisfactory accounts with the Royal Bank of Canada since February 1998 and is currently a client in good standing.

Let us know if you require any additional information.

Yours truly

J. A. (June) Yee
Customer Assistance Officer

Confidential pursuant to Securities and Exchange Act s.24(d).
DO NOT DISCLOSE TO CRIMINAL AUTHORITIES. Do not disclose to
third parties except for purposes of SEC investigations and
proceedings. Call OIA for further information at x16690.

SCB-0001062

ACN21863

**ENDORSEMENTS AND LIMITATIONS**
This passport is valid for all countries unless otherwise endorsed (subject to any visa or other entry regulations of countries to be visited).

**MENTIONS ET RESTRICTIONS**
Ce passeport est valable pour tous les pays, sauf indication contraire. (Le titulaire doit également se conformer aux formalités d'entrée des pays où il a l'intention de se rendre.)

(Signature of bearer - Signature du titulaire)  *Ben Kirk*

PASSPORT / PASSEPORT

CANADA

| Type/Type | Issuing Country/Pays émetteur | Passport No./N° de passeport |
|---|---|---|
| P | CAN | [redacted] |

Surname/Nom
KIRK
Given names/Prénoms
BENJAMIN THOMPSON
Nationality/Nationalité
CANADIAN/CANADIENNE
Date of birth/Date de naissance
[redacted] 78
Sex/Sexe  Place of birth/Lieu de naissance
M       MURRAYVILLE CAN
Date of issue/Date de délivrance   Issuing Authority/Autorité de délivrance
27 JUNE/JUIN 05   VANCOUVER
Date of expiry/Date d'expiration
27 JUNE/JUIN 10   *Ben Kirk*

P<CANKIRK<<BENJAMIN<THOMPSON<<<<<<<<<<<<<<<
JP502317<0CAN7810107M1006272<<<<<<<<<<<<<<02

Confidential pursuant to Securities and Exchange Act s.24(d).
DO NOT DISCLOSE TO CRIMINAL AUTHORITIES. Do not disclose to third parties except for purposes of SEC investigations and proceedings. Call OIA for further information at x16690.

SCB-0001063

# BChydro

| | | Billing Date | Account Number |
|---|---|---|---|
| Prepared For<br>BEN T KIRK | | Jun 29, 2007 | 6063 003 |
| VANCOUVER BC V6Z 2N1 | | Pay By | Please Pay |
| | | Jul 23, 2007 | $79.07 |

Invoice Number:
119002233178

| Meter Reading Information | Customer Service | Phone: (604) 224-9376  Power Out? 1-888-769-3766<br>Mail to: BC Hydro, PO Box 9501 Stn Terminal, Vancouver BC, V6B 4N1 | |
|---|---|---|---|
| Electric<br>Meter # 1736132<br>May 31   79567<br>Jun 28   80670<br>29 days   1103 | Previous Bill | Balance payable from your previous bill<br>Thank you for your payment  Jun 27, 2007 | 109.18<br>109.18CR |
| Next meter reading on or about Jul 30 | | Balance from your previous bill | $0.00 |
| | BC Hydro | **Electric Charges** | |
| | | May 31 to Jun 28   ( Residential rate 1101 )<br>Basic charge: 29 days @ $0.12130 /day<br>Usage charge:  1103 kW.h @ $0.06150 /kW.h<br>Rate Rider at 2%<br>Regional transit levy: 29 days @ $0.06240 /day<br>* GST | 3.52*<br>67.83*<br>1.43*<br>1.81*<br>4.48 |
| | | | $79.07 |
| Questions about saving energy? Call (604) 431-9463 or visit our website at www.bchydro.com<br>Other questions? Call the numbers displayed in the Customer Service area of this bill. | Taxes | The following is a summary of taxes billed to your account since your last invoice:<br>GST at 6% on 74.59 | 4.48 |
| | | **Balance payable** | **$79.07** |

Thank you for keeping your account up to date.

Power out? To report an outage and get details on power restoration, call 1 888 POWERON (1 888 769-3766). Or call *HYDRO (*49376) from your cell phone. Outage information is also available at www.bchydro.com/outages.

Save trees and reduce clutter! Receive your bill and up to two years of your account information on the Internet at no charge. Go to our website at bchydro.com/login to sign up.

Page 1 of 1

Confidential pursuant to Securities and Exchange Act s.24(d).
DO NOT DISCLOSE TO CRIMINAL AUTHORITIES. Do not disclose to third parties except for purposes of SEC investigations and proceedings. Call OIA for further information at x16690.

SCB-0001064