# EXHIBIT 51

JUN-17-2009 19:47  FROM:BTK CONSULTING        6046051577           TO:17604481801           P.1

*no account may be opened without a copy of a valid form of picture indentification*

Rep 2101



## ALPINE SECURITIES
*Stock Brokerage & Investment Company*

**CUSTOMER ACCOUNT INFORMATION**

| Account Name |
|---|
| DYLAN BOYLE |

| Marital Status (Please Check) | Number of Dependents | Citizenship | Date of Birth (MM/DD/YYYY) |
|---|---|---|---|
| ☑ Single ☐ Married ☐ Divorced ☐ Widowed | Ø | CANADIAN | |

| Joint Tennant Name (If Applicable) |
|---|
| n/a |

| Marital Status (Please Check) | Number of Dependents | Citizenship | Date of Birth (MM/DD/YYYY) |
|---|---|---|---|
| ☐ Single ☐ Married ☐ Divorced ☐ Widowed | | | |

| Home Address | City | Province | Country | Postal Code |
|---|---|---|---|---|
| 195 ST. MORITZ TERRACE | CALGARY | AB | CAN | T3H 5X9 |

| Mailing Address (if different from above): | City | Province | Country | Postal Code |
|---|---|---|---|---|
| Same above | | | | |

| Daytime Phone | Cell Phone | Fax |
|---|---|---|
| 403-217-9293 | 403-700-2662 | 403-217-9293 |

Email Address
✎ dboyinvan@live.com

By providing your email address, you hereby authorize Alpine to send all statements, trade confirmations, and any other official communication which you may require to this email address.

I would like the proceeds of sales:
☐ Sent in the form of a check.   ☑ Held in a money market account.   ☐ Sent as a wire transfer (send instructions)

| Employer Name | Position/Title |
|---|---|
| THE KEG RESTAURANTS | SERVER |

| Address | City | Province | Country | Postal Code |
|---|---|---|---|---|
| 7104 MACLEOD TRAIL SE | CALGARY, AB | CAN | T3H 5X9 | |

| **Affiliations and Acknowledgements** | **Other Accounts** |
|---|---|
| Do you have a securities license or are you affiliated with any stock exchange?<br>☐ Yes (see below)   ☑ No | Do you currently maintain an account with another brokerage or investment firm?<br>☑ Yes (see below)   ☐ No |
| Firm Name          Location (City, Country) | Firm Name          Location (City, Country)<br>GIBRALTAR GLOBAL, BAHAMAS |

| **Banking** | **Information Release** |
|---|---|
| Bank Name:          Location (City, Country)<br>BANK OF MONTREAL, VANCOUVER | In order to comply with SEC regulations, we require your permission to release your account information to issuers.<br>We will assume Yes if left blank.<br>☑ Yes   ☐ No |

The following is an entire list of the public companies in which I am:
(1) An officer or director;
(2) A holder, directly or indirectly, of 5% or more equity interest.
(3) A corporate "insider," "controlling person," member of a controlling group or representative of a corporate insider, controlling person or group.
(Use the back of this paper if more room is needed. If none, write "none.")

| Company | Title | # Of Shares Owned |
|---|---|---|
| none | | |
| Company | Title | # Of Shares Owned |
| | | |

Name

Acct. #

# Suitabillity Determination

Alpine Securities will use the following information to determine your sutiability as per the 15-g rules set forth by The United States Securities and Exchange Commission.

## Financial Information

Annual Income:
- ☐ $0 - $25,000
- ☐ $25,000 - $50,000
- ☐ $50,000 - $100,000
- ☐ $100,000 - $200,000
- ☑ Over $200,000

Net Worth
- ☐ $0 - $25,000
- ☐ $25,000 - $100,000
- ☐ $100,000 - $500,000
- ☐ $500,000 - $1,000,000
- ☑ $Over 1,000,000

Liquid Net Worth
- ☐ $0 - $25,000
- ☐ $25,000 - $100,000
- ☐ $100,000 - $500,000
- ☐ $500,000 - $1,000,000
- ☑ Over $1,000,000

## Personal Assets:
- ___% Stock
- ___% Bonds
- ___% Cash
- ___% Real Estate
- ___% Business
- ___% Other

## Tax Bracket
Please check:
- ☐ 15%
- ☐ 20%
- ☐ 25%
- ☐ 28%
- ☑ 33%
- ☐ 35%+

## Investment Objectives
- ☑ Speculation
- ☐ Growth
- ☐ Income
- ☐ Tax Advantage
- ☐ Safety of Principle
- ☐ Other: _____

## Experience
Please fill in amount (in years) of experience with each:
- 10+ Stocks
- 10+ Bonds
- ___ Options
- ___ Commodities

## Education:
Please fill in number of years attended:
- ___ High School
- ___ College (Undergraduate)
- X College (Graduate)

Have you attended any business classes or investor training?

☐ Yes   ☑ No

If Yes, please list institutions where classes were attended in the space below:

_____

_____

## PLEASE READ BEFORE SIGNING

### Certification:

Under penalties of perjury, I certify that I have previously received a Risk Disclosure Document explaining important information about designated securities. Furthermore, the undersigned hereby represent(s) that he/she has read the terms and conditions of the Cash Account Agreement, including the reverse side thereof, and agrees to be bound, jointly and severally, to all the terms and conditions. The undersigned further affirms he/she is not acting as a nominee. The undersigned agree(s) to notify Alpine Securities if any of the above information changes.

_____   JUNE 10th 2009
Customer Signature              Date

_____   _____
Joint Customer Signature (if Applicable)   Date

I hereby certify that all information has been provided to me by the customer:

_____   4/24/09
Registered Representative   Date

_____   _____
Approval of Principal   Date

AH : Dylan

11. (a) This agreement contains a pre-dispute arbitration clause set forth in (b) below. By signing an arbitration agreement the parties acknowledge and agree as follows: (i) all parties to this agreement are giving up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed; (ii) arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited; (iii) the ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings; (iv) the arbitrators do not have to explain the reason(s) for their award; (v) the panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry; (vi) the rules of some arbitration forums may impose time limits for bringing a claim in arbitration; and (vii) in some cases, a claim that is ineligible for arbitration may be brought in court. The rules of the arbitration forum in which the claim is filed, and any amendments thereto, are hereby incorporated herein.

(b) Based on the foregoing, I agree that any and all claims, causes of action, disputes, or controversies that may arise concerning any transaction or this Agreement, shall be submitted to binding arbitration before the NASD, and specifically agree that the locale for all hearings for said arbitration shall be in Salt Lake City, Utah. I further agree that the substantive laws of the State of Utah shall be the applicable and governing law in any arbitration.

12. All transactions entered into under this Agreement shall be subject to any applicable constitution, rules, regulations, customs and usages of the exchange or market and its clearinghouse, if any, where such transactions are executed by Alpine or its agents and to all applicable laws, rules and regulations of governmental authorities and self-regulatory agencies. If any provision is enacted that would be inconsistent with any of the provisions of this Agreement, the provision so affected shall be deemed modified or superseded by the enactment, but the remaining provisions of this Agreement shall remain in effect. Except as herein provided, no provision of this Agreement may be waived, altered, modified or amended unless the same is in writing and signed by an authorized official of Alpine.

13. I authorize you at your discretion to obtain reports and to provide information to others concerning my credit standing, background and business conduct. You may ask credit reporting agencies for consumer reports of my credit history. Upon my request you will inform me whether you have obtained any such consumer reports and if you have, you will inform me of the name and address of the consumer reporting agency that furnished the reports to you.

14. The provisions of this Agreement shall be continuous, shall cover individually and collectively all accounts which I may open or reopen with Alpine, shall inure to the benefit of Alpine's present organization, and any successor organization or assigns; and shall be binding upon my heirs, executors, administrators, assigns or successors in interest. Should any term or provision of this Agreement be deemed or held to be invalid or unenforceable, the remaining terms and provisions shall continue in full force and effect. Except for statutes of limitation applicable to claims, this Agreement and all the terms herein shall be governed and construed in accordance with the laws of the State of Utah without giving effect to principles of conflict of laws. The statute of limitations applicable to any claim shall be that which would be applied by the courts of the state in which I reside or if I do not reside in the United States, the statute of limitations shall be that which would be applied by the courts in the state where the Alpine office servicing my account(s)is located.

15. I understand that you may in your sole discretion prohibit or restrict trading of securities or substitution of securities in any of my accounts. You have the right to terminate any of my accounts (including multiple owner accounts) at any time by notice to me. The provisions of this agreement shall survive the termination of any account.

16. Your failure to insist at any time upon strict compliance with any term of this Agreement, or any delay or failure on your part to exercise any power or right given to you in this Agreement, or a continued course of such conduct on your part shall at no time operate as a waiver of such power or right, nor shall any single or partial exercise preclude any other further exercise. All rights and remedies given to you herein are cumulative and not exclusive of any other rights or remedies which you otherwise have.

17. I understand that Alpine shall not be liable for loss caused directly or indirectly by government restrictions, exchange or market rulings, suspension of trading, war, terrorist acts, strikes or other conditions, commonly known as "acts of God," beyond Alpine's control.

18. I/we jointly and severally agree to indemnify Alpine and hold it harmless from any liability (including attorneys' fees) arising out of or related to any actual or alleged improper or unsuitable actions resulting from instructions given to Alpine by me/us.

19. I agree that if I utilize your services to receive or issue funds by wire (wire transfers), I am responsible for the issuance of accurate and complete instructions in relation to said wire transfers and I will hold you harmless from all liabilities if I fail to fulfill this responsibility. I further agree that if I should incur a loss in connection with a wire transfer as a result of negligence or other activities on your part, your liability will be limited to the actual amount of the misdirected or misapplied funds and no other damages of any other nature including consequential damages will be recoverable.

Customer Name

Customer Signature

Date

Date                        Customer Signature

# SUITABILITY DETERMINATION

Based upon the foregoing information which I have provided, Alpine Securities Corporation has made the determination that transactions in designated securities are suitable for me and that I have sufficient knowledge and experience in financial matters to enable myself to evaluate the risks of transactions in designated securities. In this regard, I have informed Alpine Securities that I understand that there is risk in connection with investments in designated securities which could involve the loss of my entire investment with respect to any particular designated security. This suitability determination should therefore not be construed by me as an indication that Alpine Securities Corporation believes any particular investment by me in a designated security is a safe investment or an investment that will result in a gain to me and does not constitute a recommendation to purchase any security.

THE FOREGOING STATEMENT IS REQUIRED TO BE PROVIDED TO YOU BY RULE 15G-9 UNDER THE SECURITIES EXCHANGE ACT OF 1934. IN ADDITION, IT IS UNLAWFUL FOR ALPINE SECURITIES CORPORATION TO EFFECT A TRANSACTION IN A DESIGNATED SECURITY SUBJECT TO RULE 15G-9 UNLESS ALPINE SECURITIES CORPORATION HAS RECEIVED, PRIOR TO THE TRANSACTION, A WRITTEN AGREEMENT TO THE TRANSACTION FROM YOU.

YOU SHOULD NOT SIGN AND RETURN THIS STATEMENT TO ALPINE SECURITIES CORPORATION IF IT DOES NOT ACCURATELY REFLECT YOUR FINANCIAL SITUATION, INVESTMENT EXPERIENCE, AND INVESTMENT OBJECTIVES. YOU AGREE TO NOTIFY US IN WRITING IF ANY OF THE ABOVE INFORMATION CHANGES.

Do you understand that investments in designated securities involve a higher than normal degree of risk, including the possibility that you could lose your entire investment in any particular designated security?

Yes                                          No

Date June 11th/09

Signature of Customer

Printed Name of Customer: Dylan Boyle

Date

Signature of Joint Subscriber (if any)

Printed Name of Joint Subscriber (if any)

Account approved for transactions in designated securities: ALPINE SECURITIES CORPORATION

By

Duly Authorized Officer

JUN-22-2009 19:16  FROM:BTK CONSULTING       6046051577           TO:17604481801       P.4

**5. No Warranties/Limitation on Liability.**

**I AGREE THAT THERE ARE NO WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO ALPINE'S ELECTRONIC SERVICES, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTIES OF MERCHANTABILITY, REASONABLE CARE, FITNESS FOR A PARTICULAR PURPOSE OR AGAINST INTELLECTUAL PROPERTY INFRINGEMENT, MADE BY MY ALPINE, ITS LICENSORS OR ANY THIRD PARTY INVOLVED IN THE PROVISION OF ELECTRONIC SERVICES TO ME.**

I further agree that the sole liability of Alpine or its licensors or any third party involved in the provision of Alpine's Electronic Services to me for any claims, notwithstanding the form of such claims (e.g., contact, negligence or otherwise), arising out of errors or omissions in Alpine's Electronic Services provided or to be provided hereunder shall be to furnish the correct report or data. I further agree that I shall not hold Alpine, its information providers or any third party involved in the provision of Alpine's Electronic Services liable in any way for any loss or damage arising from or occasioned by any force majeure (e.g., flood, extraordinary weather conditions, earthquake or other act of God, fire, war, insurrection, riot, labor dispute, accident, action of government, communications or power failure, equipment or software malfunction) or by any other cause beyond such party's reasonable control.

**IN NO EVENT WILL ALPINE, ITS LICENSORS OR ANY THIRD PARTY INVOLVED IN THE PROVISION OF ALPINE'S ELECTRONIC SERVICES (OR ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AGENTS OR AFFILIATES) BE RESPONSIBLE FOR SPECIAL, INDIRECT, INCIDENTAL OR CONSEQUENTIAL DAMAGES, WHETHER OR NOT REASONABLY FORESEEABLE, AND EVEN IF ADVISED OF THE POSSIBILITY OR SUCH DAMAGES, WHICH I MAY INCUR OR EXPERIENCE ON ACCOUNT OF ENTERING INTO OR RELYING ON THIS AGREEMENT OR AS A RESULT OF MY USE OF OR RELIANCE ON ALPINE'S ELECTRONIC SERVICES. I ACKNOWLEDGE THAT SUCH LICENSORS AND ANY THIRD PARTY INVOLVED IN THE PROVISION OF ALPINE'S ELECTRONIC SERVICES (OR ANY OF THEIR RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AGENTS OR AFFILIATES) ARE THIRD PARTY BENEFICIARIES OF, AND ARE RELYING UPON THE PROVISIONS IN THIS AGREEMENT THAT MAY BE APPLICABLE TO THEM.**

**6. Amendments.** I agree that Alpine may change the terms and conditions of this agreement, in whole or in part, upon notice to me; no provision of this agreement may be amended in any other manner. I agree to use Alpine's Electronic Services only in accordance with the terms and conditions specified in this agreement as amended from time to time by Alpine, and that any amendments to the terms and conditions will be deemed effective upon dissemination by Alpine. Use of Alpine's Electronic Services after receipt of such amendments will be deemed to be acceptance of such amendments.

**7. Entire Agreement.** This agreement, together with my account agreement(s), contains the entire agreement between me and Alpine with respect to the subject matter contained in this agreement and supersedes all prior or contemporaneous communications, whether oral, written or electronic. If any provision of this agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not affect the validity of the remaining provisions of this agreement. This agreement will be governed by the laws of the State of Utah.

Dylan Boyle
Name on Account

DBoy IN VANWLIVE.COM
Email Address

Signature
June 23RD 2009
Date

2

JUN-22-2009 19:17   FROM:BTK CONSULTING          6046051577              TO:17604481801          P.6

*Scottsdale Capital Advisors, an Arizona corporation.* **Member FINRA & SIPC**

## Account Application Agreement Supplement

ACCOUNT NO. _____

Scottsdale Capital Advisors (SCA) has entered into an arrangement with Penson Financial Services ("Clearing Firm") to provide clearing and execution services to accounts introduced by SCA. SCA may enter into other clearing arrangements with other Clearing Firms for the same purpose. This Account Application Agreement Supplement sets forth additional terms and conditions concerning your relationship with SCA. By signing below you hereby agree to the following:

I have read and understand SCA's general Disclaimer, including the following referenced disclosures, as applicable to my account: SCA's Privacy Statement, the Margin Disclosure Statement, Day-Trading Risk Disclosure Statement, Options Risk Disclosure (including a Supplements thereto), Portfolio Margin Acknowledgement, Payment for Order Flow, Order Routing, and Mutual Funds Breakpoint Discounts. The Disclaimer also contains important information about SIPC (including a link to its website). I agree to access the Disclaimer and the above linked disclosures electronically from the homepage of SCA's website at _____ (the "Website") for updates at least annually or sooner if directed from time to time by SCA.

Investment Adviser Clients. I received and read SCA's ADV Form Part II found in the Website.

I further agree to pay all costs, fees, expenses, liabilities associated with my account that may occur now or in the future ("Account Fees"). I authorize SCA to deduct any Account Fees due to SCA from my accounts maintained at SCA.

I understand and agree my Clearing Firm account agreement contains a predispute arbitration clause and such clause applies to any dispute between me and SCA, as the introducing broker.

To help the government fight the funding of terrorism & money laundering activities, Federal Law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account. What this means to you? When you open an account, we will ask for your name, address, date of birth and other information that will allow us to identify you. We may also ask to see a copy of your driver's license or other identifying documents. Clients must provided proof of identification (copy of drivers license, passport, etc.) when opening an account and may be ask to do so again in the future.

DYLAN BOYCE _____     JUNE 23rd 2009
Name            Signature            Date

_____     _____     _____
Name            Signature            Date

7170 E. McDonald Drive Suite 6 Scottsdale, AZ 85253
**Office** (480) 603-4900 **Toll Free** (866) 404-9051 **Fax** (480)603-4901

(SCA 10-2008)